# Cobb *v.* The State.

*Indictment for Murder.*

1. *Evidence as to good character; charge in reference thereto.*—In a criminal case, evidence of defendant's good character may be sufficient to generate a reasonable doubt, but only when considered in connection with the other evidence in the case; and on a trial under an indictment for murder, charges which instruct the jury "as a matter of law that good character may itself, in spite of all evidence to the contrary, raise a doubt in the minds of the jury, and so produce an acquittal," and that "If the defendant has proved a good character as a man of peace, the law says that such good character may be sufficient to create or generate reasonable doubt of his guilt, although no such doubt would have existed but for such good character," assert erroneous propositions and are properly refused.

2. *Homicide; effect of defendant giving himself up.*—The fact that when charged with the commission of a crime the defendant refuses to flee, but surrenders himself to the proper authorities, can not be considered as showing his innocence of the offense charged; and an instruction to the jury that they "may look to the fact that the defendant gave himself up as tending to lessen any criminating circumstances," is erroneous and properly refused.

3. *Impeachment of witness; charge as to effect thereof.*—A charge which instructs the jury that "If one or more of the State's witnesses has been impeached this may be sufficient to generate in the minds of the jury a reasonable doubt of the defendant's guilt in this case," is erroneous and properly refused; such charge authorizing the jury to entertain a reasonable doubt upon the impeachment of one or more of the State's witnesses, although the other evidence in the case may have been sufficient to show that the defendant was guilty as charged.

4. *Impeachment of witness by contradictory statements; must be as to material facts.*—To impeach a witness by showing statements made by him contrary to his testimony on the trial, the contradiction must be as to a material fact in the case; and a charge to the jury which instructs them upon the effect of contradictory statements made by a witness out of court, as discrediting his entire testimony, but does not predicate that the contradiction was in reference to a material fact, and ignores the offering of explanatory evidence, is erroneous as announcing an incorrect principle of law, and also as an invasion of the province of the jury.

5. *Malice; presumption from use of deadly weapon; when not overcome.* The presumption of malice, which the law raises from the use of a

[Cobb v. The State.]

deadly weapon is not affected or overcome by the fact that the gun with which the homicide was committed was loaded with bird shot; and a charge which instructs the jury that when a gun is so loaded the law raises "no presumption of malice from the use of a deadly weapon," is erroneous and properly refused.

6. *Homicide; self-defense; charge to the jury.*—On a trial under an indictment for murder, a charge which instructs the jury that if they believe certain evidentiary facts therein recited, tending to show improper conduct by deceased towards defendant's daughter, no legal obligation would attach to defendant for telling deceased he ought to be drummed out of town, so as to deprive the defendant of the right to kill in defending himself from an assault occasioned by such words, is properly refused; such charge being argumentative, misleading and invasive of the province of the jury.

7. *Appeal; presumption by court when all the evidence not set out in the bill of exceptions; charge to the jury.*—On an appeal in a criminal case, where the bill of exceptions fails to show that it contains all the evidence introduced on the trial, the Supreme Court can not say that there was error in the refusal of a charge which states a correct proposition of law respecting the right of the jury to disregard the testimony of a certain witness by reason of her bad reputation for truth and veracity, except so far as she is corroborated by other credible testimony, or by facts and circumstances proved on the trial; since there might have been evidence tending to corroborate such witness' testimony as to every material fact testified to by her, and if there was such testimony, the charge was abstract and properly refused.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The appellant, Jake Cobb, was indicted and tried for the murder of S. S. Booth, was convicted of murder in the second degree, and sentenced to the penitentiary for ten years.

Upon the trial of the cause, as is shown by the bill of exceptions, it was shown by the evidence, that in Montgomery county, before the finding of the indictment under which the defendant was being tried, S. S. Booth was killed by defendant in defendant's house by two gun shot wounds in the head and breast; that S. S. Booth was a travelling singing-school teacher, and had been in defendant's community for about two weeks, teaching a singing class, to which defendant's daughter belonged; that defendant never knew Booth before; that immediately after the killing, defendant surrendered himself to the nearest justice of the peace; that two days prior

[Cobb v. The State.]

to the killing Booth had introduced in a gathering of young people at a church in the community, defendant's daughter as his (Booth's) wife, which fact had been communicated to the defendant prior to the killing.

Clara Clayton a witness for the State testified that she lived near defendant's house and frequently helped his wife around the house, cooking and washing; that on the morning of the killing she heard defendant tell his wife that he intended to kill Booth, and if. he came to the house that morning, to meet him kindly and send Irene (defendant's daughter) after defendant; that in the absence of defendant in his field Booth did come to defendant's house and was seated on the front porch; that when defendant came, he greeted Booth in a friendly manner and sat down on said porch and engaged in a pleasant conversation with Booth; that defendant was then called to his lot east and back of his premises by a negro man who was there building a stable for defendant; that after a few minutes interview with said negro man, defendant went back to the house, entering through the kitchen, and asked his wife where those shells were; that she (Clara) asked defendant not to do anything like that, ''and he (defendant) said that he would not give Booth any $2, for he had not taught Lena (defendant's daughter) anything, and he (defendant) was going to kill the 'son of a bitch;' that when defendant started towards the porch where Booth was sitting, and she saw him point the gun at Booth, she jumped out of the window and ran, and before she got five steps away she heard a gun fire;'' that before the coroner's inquest, held a few hours after the killing, she testified that she knew nothing of the killing and was not present when it occurred. She also testified before the coroner's jury that Booth, on the Thursday night prior to the killing on Monday morning, offered money to induce defendant's daughter to meet him (Booth) in a strip of woods near defendant's house; that her testimony before the coroner's jury was false, because she was afraid of defendant who had threatened to kill her if she testified otherwise; that defendant made said threat immediately after he came back from the justice of the peace in the back yard behind the kitchen.

Will Cobb, a witness for the defendant, testified that during the morning of the homicide, he had the gun

with which the defendant shot Booth, trying to shoot a hawk, and that the gun was loaded with number 8 bird shot, and that he had laid the gun on the table in the hall in defendant's house. The justice of the peace, to whom defendant surrendered himself after the killing, testified to facts contradicting the testimony of Clara Clayton, as to the threat made by the defendant to her, to get her to testify as she did before the coroner.

Several witnesses for the defendant testified that they knew the character of Clara Clayton for truth and veracity in the community in which she lived, and that her character was bad, and that from their knowledge of her character, they would not believe the testimony of Clara Clayton in a court of justice.

The defendant testified in his own behalf that shortly before the killing he returned from his field to his house and found said Booth sitting on his front porch; that he sat down and engaged in a few moments conversation with said Booth; that he (defendant) came in the house with his knife in his hand whittling on a corn stalk; that Booth borrowed his knife to trim a goose quill for a toothpick; that he was called to his lot by one Peter Dodson, who wanted to sell him some fodder; that on his return to the house he climbed up on the front porch at the east end; that as soon as he got on his porch Booth thereon told defendant that he (Booth) had organized a singing class at High Log, a place eight or nine miles away; that Booth requested him to allow his (defendant's) daughter to go to High Log for the purpose of joining said class, as he (Booth) would not let it cost him anything; that thereupon defendant said to Booth: "I hope you wont teach other people's gals like you want to teach mine, and if you do, you ought to be drummed out of the country." That thereupon said Booth jumped up from his chair and cut defendant in the side, cutting his shirt and making a slight wound; that defendant retreated to the middle of the hall from the porch pursued by Booth with knife in hand; that he grabbed his gun which was lying on a table in the hall and shot said Booth twice in quick succession, from which said gun shots Booth fell forward to the floor and died in a very few minutes; that the said Clara Clayton was not there, and that he had no conversation with her before the coroner's inquest; that he

did not go in the back yard at all; that he heard the testimony of said Clara Clayton, and that it was a "lie straight out from beginning to end." That Clara Clayton had told his (defendant's) wife, and his wife had told him, how Booth offered her money to get defendant's daughter to meet him (Booth) in a strip of woods on Thursday night prior to the killing. That on that night Booth asked Cobb's daughter in the presence of several other young ladies at defendant's house, if Clara Clayton had told her what he had said, and she asked Booth what he wanted, and several of them tried to get him to tell what he wanted with her, but he refused to do so, or passed it off in a jocular way.

There were many witnesses introduced for the defendant who testified that they knew his character for peace and quiet in the community in which he lived, and that defendant's character was good.

The bill of exceptions does not recite that it contained all the evidence introduced upon the trial. The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (3.) "I charge you, as a matter of law, that good character, may of itself, in spite of all evidence to the contrary, raise a reasonable doubt in the minds of the jury and so produce an acquittal." (5.) "I charge you, that if the defendant has proved a good character as a man of peace, the law says that such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed but for such good character." (8.) "I charge you, gentlemen of the jury, that you may look to the fact that the defendant gave himself up as tending to lessen any criminating circumstances." (9.) "I charge you, if one or more of the State's witnesses have been impeached, this may be sufficient to generate in the minds of the jury a reasonable doubt as to the defendant's guilt in this case, and if, under all the testimony, there is a probability that defendant was without fault in bringing on the difficulty, and that he fired the fatal shots under the reasonable apprehension that it was necessary to shoot in order to save his own life, or to save himself from great bodily harm, then the jury must find the defendant not guilty." (11.) "The jury are instructed, that in determining

[Cobb v. The State.]

the questions of fact in this case, they should consider the entire evidence introduced by the respective parties; but the jury are at liberty to disregard the statement of all such witnesses, if any there be, as have been successfully impeached, either by direct contradiction or by proof of having made different statements at other times, or by proof of bad reputation for truth and veracity in the neighborhoods where they live, except in so far as such witnesses have been corroborated by other credible evidence or facts proved on the trial.'' (13.) ''If the jury believe from the evidence that the gun with which the defendant killed Booth was loaded with No. 8 bird shot, then in this case the law raised no presumption of malice from the use of a deadly weapon.'' (14.) ''The court further charges the jury, that if they believe from the evidence that the witness, Clara Clayton, is a person of bad reputation for truth and veracity in the neighborhood where she lives, then, as a matter of law, this fact tends to discredit her testimony, and the jury may entirely disregard it, except in so far as she is corroborated by other credible testimony, or by facts and circumstances proved on the trial.'' (16.) ''If your jury believe from the evidence that the deceased (Booth) had been introducing into society the daughter of the defendant as Booth's wife in that community, and had made indecent proposals to her, looking to her debauchery, and that subsequently Booth came to defendant's house and proposed to defendant to accompany his daughter some distance to another community to teach her singing lessons without charge, then upon these acts, without more, the defendant had the right to resent these attentions, and he was not guilty of any legal blame under such circumstances, without more, in telling Booth that if he taught other girls what he had been trying to teach his (defendant's) daughter, he ought to be drummed out of the community. The words, without more, would not constitute such legal blame as would deprive the defendant of the right to show that he killed the deceased in self-defense.''

A. A. WILEY, GEORGE STOWERS and HOLLOWAY & HOLLOWAY, for appellant.—1. The court refused to give the charges requested by the defendant which involved the fact as to good character, which was proven on the

[Cobb v. The State.]

trial.—3 Greenl. on Evidence, 33 ; *Heine v. Commonwealth,* 91 Pa. 145 ; Wharton's Crim. Law, (8th ed.), 644, § 67 ; *Carson v. State,* 50 Ala. 134 ; *Felix v. State,* 18 Ala. 720 ; *Williams v. State,* 52 Ala. 413.

2. Charges 9, 11 and 14, asserted correct propositions as applicable to the facts of the case and should have been given.—*Gregg v. State,* 106 Ala. 44 ; *Washington v. State,* 58 Ala. 355 ; *Miller v. Pope,* 39 Ill. 463 ; Sackett's Instructions to Juries, 32 ; *Crabtree v. Hagenbaugh,* 25 Ill. 233 ; *Bowers v. People,* 74 Ill. 419 ; *O'Rourke v. O'Rourke,* 43 Mich. 58.

3. The 16th charge should have been given.—*State v. Perigo,* 70 Iowa 657 ; *Commonwealth v. Selfridge,* 1 Lawson Cr. Defenses 1.

WILLIAM C. FITTS, Attorney-General, for the State.— The 3d and 5th charges were erroneous and were properly refused.—*Johnson v. State,* 105 Ala. 113 ; *Grant v. State,* 97 Ala. 35 ; *Goldsmith v. State,* 105 Ala. 8 ; *Scott v. State,* 105 Ala. 57 ; *Webb v. State,* 106 Ala. 52.

The 8th charge was properly refused.—*Jordan v. State,* 81 Ala. 20. Under the authority of *Crawford v. State,* 112 Ala. 1, the 9th, 11th and 14th charges were properly refused.

COLEMAN, J.—The defendant was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary. The questions reserved for review relate to the refusal of the court to give certain instructions to the jury, requested by the defendant. The charges which involve the effect of good character, were properly refused under the following authorities : *Goldsmith v. The State,* 105 Ala. 8 ; *Scott v. The State, Ib.* 57 ; *Webb v. The State,* 106 Ala. 52 ; *Crawford v. The State,* 112 Ala. 1.

Charge number 8 was properly refused under the authority of *Jordan v. The State,* 81 Ala. 20.

Charges numbers 9 and 11 are substantially similar to instructions which were condemned in the case of *Crawford v. The State, supra.* These charges are vicious upon other grounds. Charge 9 asserts the proposition, that if one or more of the State's witnesses had been impeached, that fact might be sufficient to generate a reasonable doubt of defendant's guilt, notwithstanding

[Bell v. The State.]

the other evidence in the case demanded a conviction of the defendant. Charge 11 not only fails to predicate the contradictory statements as to material facts, but utterly ignores the explanatory evidence offered by the witness, as to former different statements.

Charge 13 is so manifestly erroneous that it requires no comment.

Charge 16 is vicious for several reasons. It is a mere argument, and for this reason should have been refused. It invades the province of the jury. It charges upon the weight of evidence, and is misleading.

Charge 14 in our opinion asserts a correct proposition of law, if authorized by the evidence. The bill of exceptions fails to show that it contains all the evidence. When the record is in this condition, we are bound to presume there was other and sufficient evidence to justify the action of the trial court, if there might have been such other evidence properly introduced. There might have been evidence introduced on the trial, tending to corroborate Clara Clayton as to every material fact testified to by her. We cannot say there was not. If there was such evidence, then charge 14 was abstract and properly refused.

Affirmed.


*Indictment for Murder.*

