140 So. 617

### COX v. STATE.
### 7 Div. 845.

Court of Appeals of Alabama.
March 22, 1932.

Appeal from Circuit Court, Etowah County; Woodson J. Martin, Judge.

Jeff Cox was convicted of selling or removing personal property on which there was a lien, and he appeals.

Frank J. Martin and Inzer, Inzer & Davis, all of Gadsden, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

**40**

etc., and in line with the decision in Shoults v. State, 208 Ala. 598, 94 So. 777, the proof would have to establish the fact that at the time of the finding of the indictment Cobb was the owner of the contract, or had an interest therein, otherwise he could not be defrauded by a sale or disposition of the property, but the fact of indorsement of transfer was evidence tending to prove title out of Cobb; this was not conclusive. Moreover, the evidence of the transfer was favorable to defendant and he could not complain that the contract otherwise proven and relevant contained the indorsement. On the question of variance as shown by the contract and its indorsed transfer to the First National Bank, we have to say: The transfer was not without recourse, and therefore, if not paid by defendant, the obligation reverted to Cobb. There was some evidence tending to prove that the contract had been retransferred to Cobb at the time of the indictment, which made this a question for the jury.

■ The defendant insists that the state has failed to prove the corpus delicti, and for that reason he is entitled to the general charge. In this case the corpus delicti is: (1) The execution of the sales contract by defendant payable to Cobb Motor Car Company; (2) the delivery of the car described in the sales contract to defendant; (3) that defendant failed to pay the purchase price named; (4) that defendant disposed of the car with the purpose to hinder, delay, or defraud the holder of the lien. It is not indispensable to proof of the corpus delicti that it should be by direct evidence. It may be proven by facts and circumstances from which the jury might legally infer that the offense had been committed. McWhorter v. State, 16 Ala. App. 168, 76 So. 325. As to (1), (2), and (3), above, there is no dispute. As to (4), when it appears from the evidence that default had been made in the installment due and the car when sought by the lienholder was gone and could not be found in the community where, under the contract, it should have been, the jury was warranted in finding from the evidence that the defendant had disposed of the car. Martin v. State, 3 Ala. App. 90, 58 So. 83; Holcomb v. State, 19 Ala. App. 24, 94 So. 917. In addition to the above, the legal presumptions to be drawn therefrom as to defendant's intent to defraud, which may be presumed from the unlawful act of defendant in disposing of the car and the resulting injury to the lienor, it appears that shortly after the disappearance of the car, i. e., "in a few days," and without informing Cobb, defendant left Gadsden with his wife, and they remained away for nearly ten years. From these facts the jury could infer the fraudulent intent necessary to a conviction and the burden was cast on the defendant to prove contra facts which would generate in the minds of the jury a reasonable doubt of his guilt.

**SAMFORD, J.**

■ The written instrument under which the lien was claimed was a sales contract in favor of Lem Cobb in which the title to the automobile therein described was retained in the said Cobb until the purchase price should be fully paid. The contract contained the usual representation as to residence and promises not to remove the property, etc. The contract was signed by the defendant, but was not witnessed. Over the objection of defendant the court allowed Lem Cobb, the payee named in the contract, to testify to its execution. This ruling of the court was free from error. Code 1923, § 7703; Jones on Ev. Par. 545; Malchow v. State, 5 Ala. App. 99, 59 So. 342. If the above seems to be in conflict with Coleman v. State, 79 Ala. 49, the answer is that decision was rendered before the adoption of section 4005 of the Code of 1907 (now section 7703, Code 1923).

■■ It is next contended that the indictment charged the intent to injure or defraud Lem Cobb when the indorsement on the sales contract bore an indorsement as follows: "For value received we hereby transfer and assign the within contract to the First National Bank of Gadsden, signed Cobb Motor Company by L. J. Cobb." This transfer was not dated. The indictment in this case charged an intent to defraud Lem Cobb doing business,

■ We adhere to the rule announced in Taylor v. State, 20 Ala. App. 161, 101 So. 160, and Clayton v. State, 21 Ala. App. 288, 107 So. 724, but the above evidence offered by the state raises more than suspicion. The lien on the car in favor of Cobb was valid, defendant knew it existed, he knew that the debt was unpaid, he knew that he owed it, he knew that to dispose of the car would hinder, delay, or defraud the lienholder, and, if he disposed of it, the legal presumption is that he intended to defraud.

■ The state introduced as a witness Joe Gramling, who was, at the time of the loss of the car in question, a deputy sheriff for Etowah county, who testified that Cobb came to him some time in 1922 and asked him to help locate the car described in the contract. Defendant insists that this testimony is hearsay. If so, this testimony was without prejudice. Moreover, this testimony tends to show what investigation as to the loss was made by Cobb, the holder of the paper.

The defendant claims and insists that he has been denied a fair and an impartial trial such as the law contemplates by reason of the conduct of the prosecuting solicitor and the rulings of the court as hereinafter appears as follows: The defendant's witness Alford having testified to a state of facts tending to prove that the car in question had been stolen from his barn on a certain night, the solicitor asked: "Was that the night that he (defendant) had five gallons of liquor in the car and got the back end shot full of holes?" The defendant objected to this question, but the court made no ruling other than to say after the witness answered "No": "He says it was not the night." The solicitor then said: "We are going to show he run off on the night after the officers shot at him." On objection the court said: "That is out." The solicitor then asked: "You know, as a matter of fact that the night he disappeared and was gone that he was caught with five gallons of liquor in that automobile, don't you?" The witness answered before defendant's attorney had time to object: "No sir, I don't." To defendant's objection when made the court said: "He says he doesn't know." The solicitor then asked: "You remember the time Ed Robinson, in company with some other officers on this particular night when he is supposed to leave chased him with some liquor in his car and shot it full of holes?" This question was objected to, in response to which the court ruled: "If that was the same car he was in it would be relevant testimony." The witness answered: "I don't know anything about it." The solicitor continued this line of inquiry in several different questions, all of which assumed that the car had been shot full of holes from the rear by officers, because the car contained whisky and was running away. On recross-examination the solicitor continued the same line of questioning regarding the shooting of the automobile, with objections and exceptions from defendant and with the witness continuing to answer he did not know.

During the cross-examination of Bob Alford, another witness for defendant, the solicitor pursued the same character of questioning, assuming facts not proven, regarding bullet holes in the rear end of the defendant's automobile. On cross-examination of defendant while he was being examined as a witness, the solicitor, after defendant had testified that the car was stolen from him, and that he did not know when he left for California that a charge was pending against him, asked this question: "The first you heard about it was when you got arrested for stealing chickens. Who told you they had an indictment against you?" Objection to this question was not ruled on, and the defendant answered: "I haven't been arrested for stealing chickens." Without waiting for the court to rule on objections made, the solicitor remarked: "Well, they had you down there." After insistence by the defendant the court said: "I have ruled the testimony out, go ahead with the examination." The solicitor then said: "Well you were down there in jail, wasn't you?" Defendant's objection to this question was overruled, and defendant answered: "About fifteen minutes." Following the evidence and in his closing argument to the jury the solicitor said: "I will tell you what he did, he went up here to Rome, Georgia, after he got that car shot full of holes and disposed of it." Defendant objected to this remark, the objection was overruled, and exception reserved. The solicitor then proceeding said: "More crooks and more criminals have been turned loose in Etowah County by this question of reasonable doubt than anything else." On objection and motion by defendant, this portion of the solicitor's argument was excluded. The defendant by his own testimony and that of two disinterested witnesses testified to a state of facts completely exonerating defendant from the crime charged. On conviction defendant filed motion for new trial, which was overruled, and exception reserved.

■ In the foregoing statement there appears some exceptions which are well taken, such as the rulings on questions asked by the solicitor assuming facts which had not been proven; for illustration the question to defendant's witness Alford: "You remember the time Ed Robinson, in company with some other officers, on this particular night when he is supposed to leave chased him with some liquor in his car and shot it full of holes?" This question and several others of similar import were asked by the solicitor, some of them were excluded and some were not, and some were not ruled on. The objections of the defendant to these questions should have been promptly ruled upon and excluded. The practice of assuming in questions facts not proven is, not only improper and unfair, but, when the assumption of such facts is deroga-

tory to the witness or to the defendant, they must result in a reversal of the case. McGehee v. State, 171 Ala. 19, 55 So. 159; Reed v. State, 18 Ala. App. 181, 90 So. 37; Montgomery v. State, 18 Ala. App. 213, 91 So. 630; Id., 207 Ala. 713, 91 So. 923; Doody v. State, 22 Ala. App. 289, 115 So. 66.

The trial court also committed error in overruling defendant's objection to the remark of the solicitor in his closing argument, as above indicated. This was the statement of a fact not warranted by the evidence. Coming as it did in the closing argument, when defendant had no opportunity either to cross-examine or even to reply, it was manifestly unfair, and invasive of defendant's rights to a fair and an impartial trial. The statement of the solicitor was of a fact unsupported by evidence and one pertinent to the issue, the natural tendency of which was to prejudice the jury. This error alone would justify a reversal. Anderson v. State, 209 Ala. 36, 95 So. 171; Cheney v. State, 23 Ala. App. 144, 122 So. 301; Rowe v. State, 20 Ala. App. 119, 101 So. 91.

After having considered this entire record, we are of the opinion that the defendant is entitled to a new trial on account of the manner and methods used by the solicitor in the examination of the witnesses. What was said by this court in Cheney v. State, 23 Ala. App. 144, 122 So. 301, and in Campbell v. State, 19 Ala. App. 349, 97 So. 783, is applicable in this case. The guilt of the defendant depended upon inferences to be drawn from proven facts, while the defendant's evidence was by direct testimony. To overcome this testimony the state must discredit it before the jury. This it may legitimately do by impeachment, contradictions, or by rigid cross-examination. The characters of the witnesses were not impeached. There were no contradictory statements. The methods used by the solicitor to discredit the defendant and his witnesses cannot be sustained. The court erred in refusing to grant the motion for a new trial.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.