34 So.2d 700

**ASH v. STATE.**

**6 Div. 436.**

Court of Appeals of Alabama.

Feb. 24, 1948.

Rehearing Denied March 16, 1948.

Jack H. McGuire, Jas. W. Strudwick and McGuire & Strudwick, all of Tuscaloosa, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant's jury trial under an indictment charging murder in the second degree resulted in a verdict of guilty of manslaughter in the first degree, and a penalty of confinement in the State penitentiary for a term of five years.

Evidence introduced by the State tends to show that on a Sunday morning in December, 1946 the appellant, hereinafter referred to as the defendant, was seen walking about in Hargrove Alley, a Negro settlement in Tuscaloosa, carrying a shotgun, and under the influence of liquor. During this time he was heard to say he was "going to kill some —," here defendant used an obscene phrase we deem unnecessary to set out.

Mattie Thomas, wife of the deceased, called to the defendant and told him not to get into any trouble. She saw Henry McCane and called to him to stop the defendant and not let him get into trouble with the gun.

McCane called the defendant to him, asked him was he crazy, and when defendant approached close enough, broke the gun, observed a shell in it, and returned its control to the defendant.

The defendant and McCane then went into McCane's house through a rear door.

The deceased, Rich Thomas, entered the house through the front door, and came to the room where defendant and McCane were. At this time McCane and defendant were standing near the rear door, and McCane was attempting to get the screen door latched.

When the deceased was close to defendant and McCane he apparently addressed deceased and asked "Are you going to be a fool all your days and going to get yourself in trouble. You go and put—." According to McCane the gun discharged at this point.

McCane did not observe what defendant did immediately after the shooting, as he devoted his attention to the deceased.

According to this witness the defendant was holding the gun by the barrel, and it was swinging just before it fired, but on redirect examination he reiterated that he did not see the shooting itself, being engaged at that time in latching the screen door.

Some of the pellets fired at this time entered the ceiling of the room near its junction with a wall.

Two police officers of the City of Tuscaloosa arrived at McCane's home a few minutes after the shooting. The deceased was dead at the time of their arrival. His body was still lying in the room wherein he had been shot.

According to one of these officers it appeared that the whole lower part of deceased's face had been shot off, and according to the other, the wound was severe, and extended from his eyes down, the chin being completely shot off.

These officers in a short while arrested the defendant at his home a few doors away from McCane's house. At this time defendant's eyes were bloodshot, he had the odor or liquor on his breath, and was then under the influence of liquor.

To one of these officers the defendant admitted he had killed the deceased, but said he did not care to make any further statement at that time.

Dr. Hardin, Coroner for Tuscaloosa County, viewed the body late that morning in an undertaking establishment. According to Dr. Hardin the wound appeared to go from "side to side" of the face.

Innumerable objections were interposed during this trial to questions seeking cer-

tain testimony. Consonant with our duty we have examined the questions raised thereby in each instance. We are clear to the conclusion that no error can be attached to any of the court's rulings in such instances, and that the court's actions in the premises were based each time on principles well settled and oft discussed in the decisions of this state. We therefore refrain from reiterating such principles in the interest of brevity.

[redacted] Counsel for appellant earnestly argue that the lower court erred in denying defendant's written request for the affirmative charge, in that there was failure to prove every essential ingredient of the offense for which he was convicted, failure of proof of the corpus delicti, and failure to show any causal connection between the wounds inflicted and the death of the deceased.

We think this argument entirely untenable. The evidence introduced by the state tends clearly to show that defendant while armed and under the influence of liquor made general threats. Thereafter, while he was solely in possession of the gun it was fired, the load entering deceased's lower face and inflicting a severe wound. Deceased died immediately, or within a few moments. Defendant shortly thereafter admitted killing the deceased. Appellant's counsel argued that "from aught that appears, the defendant could have struck his head on something as he fell, thereby causing his death rather than from the gunshot wound." Such contention cannot be indulged under the facts of this case unless it be said that a jury, and this court, must ignore all reasonable inferences from facts adduced and abandon all common sense and understanding.

Manslaughter in the first degree is defined by our code as voluntarily depriving a human being of life. Section 320, Title 14, Code of Alabama 1940.

A perusal of the evidence in this case clearly shows that the jury were justified in inferring the presence of all elements requisite to support their verdict. Clearly a question of fact was presented for the jury's determination solely whether this death was criminal, or the result of a mere accident as contended by the defendant.

Appellant's counsel further earnestly argues that the lower court erred in denying his motion for a new trial on assigned grounds of the prejudicial and inflammatory character of certain portions of the Solicitor's argument to the jury.

In this connection the record reflects the following:

"By Mr. Ward: 'Gentlemen of the Jury, I believe you are going to say to Willie Ash "You were wrong; you were violating the law; you had no right to be drunk out there on a Sunday morning where all those folks, women and children were with a loaded shotgun, threatening to kill somebody; you were violating the law, and we are going to put a stop to it. We want the headlines of the Tuscaloosa News to read otherwise." '

"Mr. Wright: We object to that argument.

"Mr. Ward: I argue it as a matter of common knowledge.

"Mr. Wright: We object to it.

"Mr. Ward: I argue it, if Your Honor please, as a matter law, that we need to change the headlines of our papers here in Tuscaloosa.

"Mr. Wright: We move to exclude that statement.

"Court: I believe I will exclude that statement.

"Mr. Ward: If Your Honor thinks it is improper argument, I will withdraw it, But Mr. McGuire said he wanted it stopped, and there is not but one way, gentlement of the jury, to stop it. When you come into the jury box and when you have brought before you a defendant who the undisputed testimony shows he was doing all of the unlawful things he was doing out there just immediately before he took the life of Rich Thomas, is to convict him and send him to Kilby where he will have time to cool off; where he will have time to think. Not only where Willie Ash will have time to think and cool off, gentlemen of the jury, but where those in the hearing of your verdict will say 'Oh, I had better not get out on the streets with that gun, because

460

I remember what that jury up there did for Willie Ash; I remember you set him off for killing poor old Rich Thomas' * * * (interrupted)

"Mr. Wright: We object to that argument * * * (interrupted)

"Mr. Ward: Yes, sir.

"Mr. Wright: Wait a minute. We move to exclude that argument from the consideration of the jury on the following separate and several grounds:

"1. Said argument is highly prejudicial to the defendant.

"2. Said argument is intended to inflame the minds of the jurors.

"3. The argument as to what others might say or think or do in connection with the verdict of the jury is highly improper, prejudicial and injured the defendant in the minds of the jurors.

"Court: Well, overruled.

"Mr. Wright: Except."

It is noted that the court excluded that part of the Solicitor's argument relative to headlines in the paper.

As we have stated before, society has a valid and strong interest in enforcement of criminal laws, not only in seeing that punishment is imposed on the guilty, but that criminal acts on the part of others are discouraged by the example of such punishment. It is the duty of the Solicitor to exercise his full powers toward these ends. In exhorting a jury to do its duty he should not be so fettered by niceties as to destroy his effectiveness. The adversary setting of a law trial partakes of combat, and not of a social tea. Even had the court not excluded that portion of the argument he did, in our opinion we would not be justified in condemning the argument set out above. To us it is nothing more than the opinion of the Solicitor based on knowledge of common facts. Such argument is not improper. Holland v. State, 24 Ala.App. 199, 132 So. 601; Floyd v. State, 22 Ala.App. 347, 116 So. 318; Whitfield v. State, 22 Ala.App. 556, 117 So. 761; Allen v. State, 249 Ala.App. 201, 30 So.2d 483. As observed by Gardner, J., in Arant v. State, 232 Ala. 275, 167 So. 540, at page 544, "Such statements are usually valued by the jury at their true worth * * * and not expected to become factors in the formulation of their verdicts."

 Some 10 of a large number of written charges requested by the defendant were refused by the trial court.

Of these written refused charges Charge No. 37 was clearly invasive of the province of the jury; Charge No. W-1 became abstract under the verdict rendered; Charges Nos. W-2, W-4, W-7, and W-8 were affirmative in nature and properly refused under the evidence; Charges Nos. W-21, W-22, and X-20 were covered by Charge W-10 given at the request of the defendant and also by the oral charge of the court.

We have found no error in this record materially affecting the substantial rights of this appellant. This cause is therefore ordered affirmed.

Affirmed.