100 So.2d 38

Hollis POWELL

v.

STATE.

8 Div. 967.

Court of Appeals of Alabama.

Aug. 13, 1957.

Rehearing Denied Oct. 15, 1957.

Powell & Powell, Decatur, for appellant.

John Patterson, Atty. Gen., and Edmon L. Rinehart, Asst. Atty. Gen., for the State.

**CATES, Judge.**

On June 14, 1955, Hollis Powell was indicted by the Grand Jury of Morgan County of assaulting Palmer Smith with intent to murder. Tried to a jury in the circuit court, he was, on February 10, 1956, found guilty of assault and battery and fined $500, to which punishment the trial judge, pursuant to Code 1940, T. 15, § 328, added six months' hard labor for the county. Upon failing to pay the fine and costs, Powell was (under Code 1940, T. 15, §§ 341 and 342) sentenced to 140 days for the fine and 304 days to pay $228 costs, all at hard labor. This latter sentence goes four days beyond the ten months' maximum specified under § 342, supra, Anderson v. State, 18 Ala.App. 429, 93 So. 68;

Maxwell v. State, 34 Ala.App. 653, 43 So. 2d 323.

A motion for a new trial specifying some 81 supporting grounds was filed March 7, 1956, and set down by the judge for hearing on April 6. The court, having heard evidence and argument, overruled the motion on April 7. The transcript of evidence was filed in the circuit clerk's office on March 31, and the record proper was filed here May 23, 1956, and submitted to us on briefs on October 4, 1956, the Attorney General's brief not having been filed until after the 1955–56 Term.

March 13, 1955, a Sunday, Mr. Palmer Smith, who was then a resident of Cullman County near Vinemont, was at the church at Powells Chapel in Morgan County. The solicitor brought out that Smith, employed at Redstone Arsenal, was a veteran, married nine years, and the father of two children by that union. The day before, a Saturday, he testified he had discovered Hollis Powell had been keeping company with Mrs. Smith, seemingly for the six months last past. Powell and Mrs. Smith had been together until midnight of March 12–13.

Mrs. Smith had gone off on Sunday afternoon with the family pick-up truck and her husband testified that in order to get the vehicle back, he went to several places in the vicinity asking about his wife. Some of his hearers seem to have formed the impression that his search was concentrated more on the whereabouts of his wife and the defendant than on locating the pick-up truck.

On the Sunday evening in question, at about dark, Smith came to the church in the company of Mr. and Mrs. Raymond Powell. Services had begun. Smith went into the building but came out before the close of the ceremony. He was sitting in a parked car with two other men when Hollis Powell came into the area before the church entrance. Smith ran toward Powell and began beating on him. Powell says he brandished an open pocket knife.

Smith says that only after Powell had fired at him twice with a .22 H & R revolver, did he get his knife out of his pocket. Powell backed up to a parked automobile and on the third shot hit Smith somewhere in the region of the left shoulder.

Powell then made off afoot to his father's home while his brother and another man took Smith to a doctor. Powell surrendered to the sheriff the next afternoon.

■ If the necessary mental state of the defendant is established, a shooting can be within the category of assault and battery, McGee v. State, 4 Ala.App. 54, 58 So. 1008. Powell takes no exception to the general charge of the judge to the jury. In addition the court gave fourteen special written instructions requested by the defendant under Code 1940, T. 7, § 273.

On this appeal Powell complains that he did not have a fair trial because (a) the solicitor, by improper arguments, statements and side remarks, created a prejudicial atmosphere, and (b) he was not allowed to make a showing of an absent witness, (c) the judge allowed the exhibition and receipt in evidence of certain of Smith's bloodstained clothing, and (d) the refusal of his requested charge 43, viz.: "I charge you gentlemen of the jury that you may consider along with the other evidence in the case the fact, if it be a fact, that the defendant voluntarily gave himself up to the sheriff in deciding the guilt or innocence of the defendant."

■ As to the first of these propositions, we think it needful to begin with the observation that Powell was here charged with assault with intent to murder by means of a pistol. Ordinarily, the use of such a weapon imports malice. The State in such circumstances may adduce evidence—which it did here—of a romantic relationship between Powell and Mrs. Smith. Admissibility of such evidence is to allow the jury to consider indicia of the defendant's entertaining a reason to do away with the husband. 3 Underhill Crim.

Evid. (5th Ed.), § 644, n. 27; Powell v. State, 219 Ala. 557, 123 So. 34. In Ray v. State, 253 Ala. 329, 45 So.2d 4, 5, the Supreme Court, per Simpson, J., said:

"* * * Though proof of motive for the crime is not indispensable to a conviction, Wingard v. State, 247 Ala. 488(1), 25 So.2d 170, it is permissible testimony in aid of the State's case. McDonald v. State, 241 Ala. 172(9), 1 So.2d 658."

So, at the outset, we find the defendant carrying a pistol from which the jury could have inferred, among other inferences, either (1) that he had in mind to kill Smith, or (2) that he feared Smith. The verdict being an acquittal of assault with intent to murder indicates that the State did not carry the point as to Powell compassing Smith's death in order to remove an obstacle in the path of his alleged pursuit of Mrs. Smith. Accordingly, this lessens the degree of any purported prejudice. However, if there was a prejudicial atmosphere in the solicitor's manner of prosecuting, we have ourselves no measuring calculus for the infinitesimal gradations of the effect upon the minds of the jury. Experience teaches us that a jury's verdict is sometimes a cathartic aimed at purging the community of an undesirable.

Hence, we consider it necessary to examine the alleged injurious conduct of the solicitor. From a reading of the transcript, it appears that he frequently employs the use of a cumulative question, i. e., summing up the answers elicited in preceding questions often with a sprinkling of opprobrious adjectives, e. g., "That while this young man was working for a living and his family and two children that this drunken gun-toter down at the church was running around with his wife; you know that?"

The questions put to various witnesses by the solicitor, of which Powell complains in his brief, are as follows:

On direct examination of State's witness, Palmer Smith:

"Q. Shot you in the left of your heart after you discovered he broke your home up on Saturday?"

"Q. And this man who had broken your home up shot you while you were at the church house in your heart?"

"Q. He used a hollow point on you at the church house after he had your wife out on Saturday night?"

"Q. It is lodged at such a strategic location they could not remove it. You were suffering a service connected disability at the time?"

On direct examination of State's witness, T. M. Hart:

"Q. Going away from home in that truck and this defendant following her?"

On direct examination of State's witness, Earl Sandlin:

"Q. Did you ever see Mr. Powell and Mrs. Smith in your store at the same time?"

"Q. Did you ever see one of them leave and the other follow close behind?"

"Q. Did you ever see them come up there—did you ever see them back in your store on the same day that you saw them follow each other away?"

"Q. Wouldn't come back together?"

"Q. Did you ever see one of them in your store and wait on the other?"

On direct examination of State's witness, Howard Turney:

"Q. That is what you saw him do: Pull a drawn pistol down on this young citizen. You knew he had been going with his wife?"

"Q. Did you see him after he put this hollow nose bullet into this fellow's heart or near the region of this left heart; did you see him glide off toward the cemetery on that Sabbath night?"

On cross examination of defendant's witness, Joe Turney:

"Q. You know he had been running around, of course, with his wife?"

"Q. That while this young man was working for a living and his family and two children that this drunken, guntoter down at the church was running around with his wife; you know that?"

On cross examination of defendant's witness, his brother, Jimmy Powell:

"Q. As a matter of fact, he had been going with Pauline a long time, had he not?"

On cross examination of defendant's witness, his uncle, J. T. Russell:

"Q. You have been in the car with him when he was riding around with this man's wife?"

"Q. Did you ever see him riding around with this man's wife?"

"Q. You heard of it, haven't you?"

"Q. You ever been along with a female companion when this defendant was out with this woman?"

"Q. You haven't been out with the same woman yourself?"

"Q. And then after they returned and gave a report at the store house that this young man whose home had been broken up and whose wife had been stolen and whose home was debauched, was down there, then they all went down to the church, this defendant, Talmadge Sheppard and yourself; isn't that a fact?"

On cross examination of the defendant:

"Q. And you kept invading this man's home, driving miles over to see his wife, knowing he was going on his job, working and sustaining his family, didn't you?"

"Q. Standing in the broad open daylight, you hugging this man's wife and knowing he was off at work?"

"Q. You kept the road hot going over there, breaking up this man's home?"

"Q. And you knew he left his home every morning to go to honest work?"

"Q. And you would get in your car and go to his home to see his wife. You lost your job over there and you wanted to see a lot more of her when you lost your job?"

"Q. You were drunk and holding a loaded pistol. I will ask you isn't it a fact you wanted this young man to get him out of the way so you could consort with his wife?"

On re-cross examination of the defendant:

"Q. That was being heralded across this community that this man whose home you broke up had been shot in the heart; that was sweeping across the mountain from mouth to mouth?"

"Q. You knew he was shot and bleeding and your own relative told you they carried him for a blood transfusion; you knew that?"

On cross examination of defendant's witness, his brother, Edward Powell:

"Q. Was he bleeding pretty bad?"

"Q. They gave him a blood transfusion that night, didn't they?"

On cross examination of defendant's witness, Peggy Sue McReath:

"Q. And it wasn't until this drunk man came on the church yard until you heard gun firing and saw blood oozing out of bodies. You saw him bleeding?"

Can we say there has been error; and, if so, has there been injury in denying Powell's motion for a new trial? This court reviews on appeal agreeably to the mandate of Code 1940, T. 15, § 389, which reads:

"In cases taken to the supreme court or court of appeals under the provisions of this chapter, no assignment of errors or joinder in errors is necessary; but the court must consider all questions apparent on the record or reserved by bill of exceptions, and must render such judgment as the law demands. *But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant.*" (Emphasis supplied.)

Supreme Court Rule 45, Code 1940, Tit. 7 Appendix provides:

"Hereafter no judgment may be reversed or set aside, nor new trial granted by this court or by any other court of this state, in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken, or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."

The appellant, therefore, has the burden of showing both error and injury. Moreover, where, as here, the trial judge has had the opportunity of observing the demeanor, gestures and tone of voice of counsel, as to matters not in the record, the appeal comes here with a presumption in favor of the ruling on a motion for a new trial. Hembree v. State, 20 Ala.App. 181, 101 So. 221 (dictum); Leonard v. State, 36 Ala.App. 397, 58 So.2d 138. As to matters which can be said to be prejudicial per se, we can as a matter of law ascribe reversible error, e. g., "honky-tonk" in Nix v. State, 32 Ala.App. 136, 22 So.2d 449.

**252**

We note that in each case the question of the solicitor contains a statement of a fact or course of conduct inferable from prior testimony. Thus, the questions are not assumptions without evidentiary foundations in the record—otherwise they would be within the influence of the pronouncement of Samford, J., in Cox v. State, 25 Ala.App. 38, 140 So. 617, since the assumptions here are derogatory to the defendant.

■ The phrasing of questions, though colored by adjectives indicative of the prosecuting attorney's vocabulary, is a phrasing which, upon full consideration, is not cut out of the whole cloth. Hence, we cannot see that the defendant can complain if an inference from the truth might hurt. Though a trial is not an exercise in bear baiting, no more is it a tea party, Ash v. State, 33 Ala.App. 456, 34 So.2d 700. As to the making of statements to the jury through the device of posing rhetorical questions, we can see the *possibility* of hurt to a defendant. Thus, Wigmore, Evidence, § 1806 (Vol. VI, p. 259), in discussing improper statements of fact in argument to the jury, says:

"* * * to be a witness without being subjected to cross-examination is to violate the fundamental principle of the Hearsay rule."

The ripening of this possibility of injury into probability can be best observed by the trial judge, and we are not here disposed to hold him in error to reversal because (1) the record fails to show that he abused his discretion in permitting the questions to be asked (see Mobile Light & R. Co. v. Gallasch, 210 Ala. 219, 97 So. 733; Beaird v. State, 219 Ala. 46, 121 So. 38) ; and (2) the error, if any, has been cured in this case by the verdict. Most of the questions complained of had as their foundation of admissibility a showing of relevance as to Powell having a motive to kill Smith. The verdict of assault and battery does not carry an overtone of such an implication.

As to the absent witness, the record shows a colloquy arising out of the issuance by the trial judge of an attachment for one Dallas Johnson in default of Johnson's appearing in response to a subpoena. Mr. Johnson, in the first instance, had been subpoenaed by a policeman of Hartselle, Alabama (delegated thereunto by a deputy sheriff). Service had been made by leaving a copy with Johnson's mother. She promised to mail it to Johnson, stating that he was in California. (Cf. Code 1940, T. 7, § 449, and T. 15, § 296.)

The solicitor had agreed orally, and "subject to legal objections" when Johnson's absence was first noticed, to a stipulated showing on behalf of Powell, reading as follows:

"The defendant offers to prove by Dallas Johnson, if present, who was duly subpoenaed by the defendant as a witness in this cause and duly served, that he was present at the church at the time of the difficulty between defendant and Palmer Smith in March, 1955; that several minutes before the difficulty occurred between them that the witness was seated in his automobile with Peggy Nell McReath and Helen Sullins and Carlton Holmes and several minutes before the difficulty Palmer Smith came over to the car and sat with them and engaged in conversation for while, and Dallas Johnson then said, 'There is Hollis Powell,' and immediately after he said that, Palmer Smith jumped out of the car and ran around the church to the front of the church very quickly; that Palmer Smith was intoxicated and drunk at the time and he appeared drunk, talked and acted like a drunk man, and that said Dallas Johnson smelled the odor of liquor on the said Palmer Smith there in the car before he jumped out and ran around the front of the church."

Upon it appearing that the witness had never been put under process by personal service, the solicitor contended that this defect was within his "legal objections."

■ The courts of this State will lend a defendant all practicable help in securing

evidence if timely sought, e. g., Parsons v. State, 251 Ala. 467, 38 So.2d 209. And this constitutional right of compulsory process will compel a continuance for a defendant not at fault, Walker v. State, 117 Ala. 85, 23 So. 670, 671. The dictum of the court, per Coleman, J., sustaining the trial judge's denial of Walker's motion for continuance succinctly gives appropriate conditions precedent to the compelling of witnesses:

"There are two reasons why the action of the court must be sustained in the present case. In the first place, no showing was made that the absent witnesses were within the jurisdiction of the court, * * *. We are of opinion that to entitle a party to compulsory process, the court has the right to require from him a showing as to the facts expected to be proved by the absent witnesses, and, further, that the witnesses are within the jurisdiction of the court. The court should also satisfy itself of the diligence used to obtain the witnesses, and the *bona fides* of the application for compulsory process, and that it is not made for mere delay. * * *"

In the absence of an interstate compact, we fail to see how compulsory process can extend beyond the territory of the State, and therefore the constitutional right does not operate where the witness sought cannot be brought to court. Accordingly, to invoke this aid, the prisoner must show the witness is compellable. See Sanders v. State, 181 Ala. 35, 61 So. 336 (as silhouetted by the dissent of Mayfield, J.); Brown v. State, 247 Ala. 288, 24 So.2d 223; Adams v. State, 33 Ala.App. 136, 31 So.2d 99.

Where a witness was visiting New York, this court did not consider the trial judge had abused his discretion in refusing a continuance, Clark v. State, 36 Ala.App. 159, 57 So.2d 375, reversed on other grounds 257 Ala. 95, 57 So.2d 384.

Where, to obtain either process or continuance, the defendant submits a statement of the expected evidence, the trial court may require the State to accept a showing. Showings in lieu of absent witnesses are usually divided into two classes, viz.: (1) stipulations (e. g., photographs, Hallman v. State, 36 Ala.App. 592, 61 So.2d 857), and (2) affidavits as to what a witness would have testified, Peterson v. State, 63 Ala. 113.

Although the record before us has an implication that the court, in entertaining the defendant's motion for a continuance, had put the showing for an absent witness upon the State (which was accepted subject to "legal objections," House v. State, 139 Ala. 132, 36 So. 732), we note that the testimony expected would have been merely cumulative of that of other witnesses. We note the trial judge did not pass on the showing until the end of the defendant's case. Even if there were error for refusing the showing which had been previously agreed on, after the trial judge learned the absent witness was out of the State both initially and at the time of trial, the constitutional basis for the use of the showing lapsed.

We have examined Smith's clothes consisting of trousers, a sports shirt, an undershirt, and a corduroy windbreaker jacket. All except the trousers have appreciable bloodstains and bullet holes. Thus, in Walker v. State, 223 Ala. 294, 135 So. 438, a hat with a bullet hole was admissible to show the course and direction of the bullet. For an able discussion, see Goodwyn, J., in Barbour v. State, 262 Ala. 297, 78 So.2d 328. The reception of these garments was free from error.

Upon the refusal of requested charge 43, supra, we are presented with the subjects of flight and surrender. Thus, in Hayes v. State, 33 Ala.App. 364, 367, 33 So.2d 744, 746, we find:

"The solicitor objected to this question which was propounded to a witness for the defendant: 'Did George make any attempt to flee or get out of the presence of Mr. H. A. Bradford or Mr. Henri Bradford from the time he left the scene of the shooting until he got to Linden?' There was no effort made by the prosecution to show that the accused attempted to evade arrest. In this state of the testimony the defendant could not show that he did not try to flee. Vaughn v. State, 130 Ala. 18, 30 So. 669; Starke v. State, 31 Ala.App. 322, 16 So.2d 426."

Powell cites us to White v. State, 111 Ala. 92, 21 So. 330, which, in turn, refers to Sylvester v. State, 71 Ala. 17, wherein the court found the following charge unobjectionable:

" 'That flight may be considered by them, in connection with the other evidence, as a circumstance of guilt; and the jury may also look to the changing of name, and to every other circumstance, as well as to whatever positive evidence that has been presented in the case, to arrive at a conclusion of the defendant's guilt.' "

In Walker v. State, 139 Ala. 56, 35 So. 1011, 1012, the Supreme Court approved this charge given for the State:

" 'The fact that, when charged with the commission of a crime, the defendant refuses to flee, but surrenders himself to the proper authorities, cannot be considered as showing his innocence of the offense charged.' "

See also Jones, Alabama Jury Instructions, §§ 6381–6384; Kelley v. State, 226 Ala. 80, 83, 145 So. 816, 819; Cobb v. State, 115 Ala. 18, 22 So. 506.

In Allen v. State, 146 Ala. 61, 41 So. 624, 625, the court said:

" * * * Proof of voluntary surrender is competent only in cases

where proof of flight has been made and in response to such proof."

We assume that appellant would distinguish his refused charge 43 from charge 38 disapproved in Green v. State, 263 Ala. 324, 82 So.2d 418, by his addition of the qualifying words, "if it be a fact." Yet, in Way v. State, 155 Ala. 52, 46 So. 273, charge 35, which is analogous and contains the clause, "if it be a fact," was held bad as argumentative, and as singling out unduly one phase of the evidence. See also charge 48 held bad in Lacey v. State, 13 Ala.App. 212, 241, 68 So. 706, 714.

There was no evidence by the State of the defendant fleeing, in the sense of evading a citizen's arrest by any of the bystanders, nor that the sheriff at the time of Powell's surrender had completed his investigation of the crime. Powell put the sheriff on the stand to show that he surrendered voluntarily. Although the State waived objection to this evidence, we do not consider that the trial judge should be considered in error for refusing a charge which has for its major premise immaterial evidence.

The other charges which were denied the defendant were properly refused, because (1) affirmative in nature in the presence of conflicting evidence; or (2) invasive of the jury's province in that they wrongly assume a fact to be undisputed; or (3) ambiguous in that they omit consideration by the jury of lesser included offenses; or (4) otherwise (particularly as to self defense) covered adequately by the judge's oral charge; or (5) were moot in the face of Powell's conviction only of assault and battery. We note that defendant's counsel did not ask our consideration of these refused charges. However, under the statute, we are required to review them.

The record being free from error, the judgment is affirmed but the cause is remanded for proper sentence as noted in the first paragraph of this opinion.

Affirmed but remanded for proper sentence.

## On Rehearing

The appellant insists that the distinction between our reasoning here and that in our opinion in Bevins v. State, 97 So.2d 572,[1] is without any valid difference. There the prejudicial harm came about through a statement in argument that Bevins committed an assault in 1952 for which there was no supporting evidence. This was bad (a) because it charged an unconnected crime (not within permissible exceptions), and (b) because it was not inferable from the evidence.

Here we have what seems to be a case of first impression, i. e., whether or not rhetorical questions partake of argument rather than constitute examination of a witness. Following this question, we were next led to consider whether or not an appellate court can discern any rule to calculate the effect of the use of such questioning. Without attempting to be infallible, we have, albeit as through a glass darkly, perceived two principles (first, the trial judge's opportunity to observe the effect on the jury and, second, the circumstance that the substance of the questions derived from matters already in evidence) to guide us in what is an uncharted course. On balancing the pros and cons, we adhere to our original affirmance.

Inasmuch as the Bevins case is now before our Supreme Court on a petition for certiorari, and since this case may or may not be distinguishable as reasonable men differ, we have extended this opinion to clarify our reasons for deciding as we have.

The application for rehearing is

Overruled.

1. Ante, p. 228.