130 So.2d 54

**Wade G. FARRIS**

v.

**STATE.**

**1 Div. 814.**

Court of Appeals of Alabama.

June 30, 1960.

Rehearing Denied Aug. 16, 1960.

B. F. Stokes, III, and Curtis L. Moody, Mobile, for appellant.

**52**

MacDonald Gallion, Atty. Gen., and Jas. W. Webb, Asst. Atty. Gen., for the State.

CATES, Judge.

Farris was indicted under two counts. The first charged him with the sale or removal of twelve automobiles for the purpose of hindering, delaying, or defrauding Associates Discount Corporation, the holder of trust receipts given by Farris for the cars. The second accused him of embezzling the cars.

■ The jury found him guilty under the first count only. Thereupon, the trial judge sentenced him to two and one-half years in the penitentiary. The specific mention of count 1 only in the verdict was, in effect, an acquittal of the charge of embezzlement. State v. Coleman, 3 Ala. 14.

Farris, an automobile dealer, had given Associates trust receipts in which he covenanted to keep the described cars at one of his places of business, 277 St. Louis Street, in Mobile "solely for the purpose of selling or exchanging said chattels or of procuring their sale or exchange to a Buyer in the ordinary course of [Farris's] trade."

On Sunday, May 31, 1959, Farris sold [1] the twelve cars to Jenkins Motor Company of Mobile at a gross sale price of $7,000. In the trust receipts he had promised not to sell below a total of $9,625. Associates later repossessed the automobiles and sold them at auction for $12,590.

Farris had sold single cars to Jenkins several times beforehand. Jenkins had no actual or constructive notice of the trust receipts.

The trust receipts offered in evidence contained a clause providing that the terms used "shall have the same interpretation and construction as they are given in the Uniform Trust Receipts Act of the State of Alabama." See Act No. 320, August 2, 1949 (Acts 1949, p. 451).

Mr. W. R. Alford, branch manager for Associates, testified for the prosecution that on Monday morning, June 1, he went by

---

1. We have not gone into the effect of the sale's being void because on Sunday. Cf. Code 1940, T. 9, § 21; Aders v. State, 21 Ala.App. 41, 104 So. 882; Gooch v. State, 249 Ala. 477, 31 So.2d 776, 174 A.L.R. 1297 (check dated on Sunday cannot support forgery without averment and proof making it for a permitted object under T. 9, § 21); McNeel Marble Co. v. Robinette, 259 Ala. 66, 65 So.2d 221.

No. 277 St. Louis Street and found only three "old model" cars on the car lot there. Defense witness, Mr. Farris's bookkeeper, testified that after the sale to Jenkins there were about ten to twelve other automobiles on the lot, and that Mr. Farris had another lot which remained in business as least two or three weeks after the transaction on May 31.

On chief the State used two witnesses, Mr. Alford and Mr. L. D. Jenkins, the purchaser of the twelve cars in question.

At the close of the State's testimony, defense counsel moved to exclude the State's evidence for failure to make out a prima facie case.

 The statute under which count 1 was laid is found in Code 1940, T. 14, § 363, which reads:

"Any person who removes or sells any personal property for the purpose of hindering, delaying, or defrauding any person who has claim thereto, under any written instrument, lien created by law for rent or advances, or any other lawful or valid claim, verbal or written, with a knowledge of the existence thereof; or who, with like intent, buys, receives, or conceals any such property, with knowledge of the existence of any such claim, shall, on conviction, be punished as if he had stolen the same."

We have come to the conclusion that the provisions of the trust receipt above quoted did not operate in this instance to prevent Farris from selling to Jenkins. The restriction to sales in the ordinary course of trade, if it were intended to prevent sales in large numbers, could easily have been expressly stated in the instrument.[2]

Some of the provisions of the Uniform Trust Receipts Act, supra, notably those defining buyer in the ordinary course of

trade and a transferee in bulk, do not, in our opinion, impinge upon this construction; indeed, they reinforce it, particularly when read in connection with the provisions of the act relating to liberty of sale (subsection 2(c) of § 9). To a buyer, allowing Farris to exhibit the automobiles on his lot showed an express liberty of sale.

Moreover, should we turn to the construction placed upon the expression "in the ordinary course of trade" in the Bulk Sales Act,[3] for analogy, we also should consider the sale to Jenkins exempt. New York Credit Men's Ass'n v. Domestic Broadtail Producers, D.C., 61 F.Supp. 102; Sternberg v. Rubenstein, 305 N.Y. 235, 112 N.E.2d 210, 36 A.L.R.2d 1136 (sale of 1300 pairs of "off season" shoes not a sale "otherwise than in the ordinary course of trade" as used in N.Y. Bulk Sales Act, Personal Property Law, § 44); Shasta Lbr. Co. v. McCoy, 85 Cal.App. 468, 259 P. 965.

The Supreme Court of Oklahoma, in Stemmons, Inc. v. Universal C. I. T. Credit Corp., Okl., 301 P.2d 212, 217, took judicial notice of the "wheeling and dealing" practices of antomobile dealers in a case involving the construction of a chattel mortgage as affected by a statute which confers some of the attributes of a trust receipt. The court said, pertinently:

"* * * most particularly since the end of the last war, it is known and recognized that automobile dealers generally transfer, trade and sell automobiles among themselves as a matter of convenience. Not only is this the common practice between so-called authorized dealers, but the practice is even more prevalent between authorized dealers and the licensed used car dealers. And, whether such transactions are for convenience in reducing a stock of merchandise, by way of financial retrenchment, or because of the opportunity for profit, the one fact

---

2. The breach of the covenant not to sell below the "sale price" we view as having civil effect only; the statute here is violated by *sale or removal* only when

some claim of general ownership is frustrated or impaired. Cobb v. State, 100 Ala. 19, 14 So. 362.

3. Code 1940, T. 20, § 10, as amended.

remains that in every instance there was a complete sale to a purchaser who gave value to a dealer, who made advantageous disposition of a unit of merchandise which he handled in the ordinary course or conduct of his business. * * *"

Consent to sell obviates any inference of intent to hinder, delay, or defraud which might otherwise arise from a sale or purported sale. Nolin v. State, 37 Ala.App. 47, 64 So.2d 102; see also at 258 Ala. 589, 64 So.2d 103; Cox v. State, 25 Ala.App. 38, 140 So. 617.

If the instrument had been silent as to sale, we should have come to the same conclusion because of our view of the provisions of the Uniform Trust Receipts Act.

See Bogert, Effect of Trust Receipts Act, 3 U.Chi.L.Rev., 26, 32; 9C U.L.A., p. 224, General Theory of the Act 2, " * * * the entruster in such case is entitled to protection only against honest insolvency of the trustee. Dishonest action of the entruster is a credit risk and bona fide purchasers are to be protected against the entruster * * *" See also Colonial Finance Co., Inc. v. De Benigno, 125 Conn. 626, 7 A.2d 841; Premium Commercial Corp. v. Kasprzycki, 129 Conn. 446, 29 A.2d 610; General Finance Corp. v. Krause Motor sales, 302 Ill.App. 210, 23 N.E.2d 781; In re Crosstown Motors, Inc., 7 Cir., 272 F.2d 224 (no "lien" in § 10 of Act as to proceeds of sale); B–W Acceptance Corp. v. Benjamin T. Crump Co., 199 Va. 312, 99 S.E.2d 606 (discussion as to purpose of statute).

Since Associates consented in advance to such a sale, it had no claim on the cars. Without the claim there was no frustrated or impaired security interest.

Because this reversal is based on the legal effect of the instruments described in the indictment, we consider the judgment is due not only to be reversed but also one should be rendered here discharging Farris.

We fail to see how, on another trial, the State could come up with other and different trust receipts. Hall v. City of Birmingham, 258 Ala. 211, 61 So.2d 775.

Reversed and rendered.