57 So.2d 375

### CLARK v. STATE.

4 Div. 182.

Court of Appeals of Alabama.

June 29, 1951.

Rehearing Denied Aug. 2, 1951.

E. O. Baldwin, Andalusia, Joe Nix, Jr., Greenville, and E. C. Boswell, Geneva, for appellant.

Si Garrett, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

The accused stood indicted for murder in the first degree. The case was submitted to the jury under only the second count, which in part alleges: " * * * unlawfully, and with malice. aforethought, killed Claudine Petty by cutting an opening in, or by puncturing her womb with a sharp in-strument, a further and better description of which is unknown to the grand Jury * * *."

It appears that the deceased was a single woman and about twenty-two years of age.

To assure an accurate understanding and a full review of the first question we consider, an excerpt from the record will be copied:

"Prior to the selection of the jury the following proceedings were had:

"Mr. Baldwin: Now if the Court pleases, this is a capital case, and we want the record to show that it is admitted that this is a capital case, a first degree murder case as the indictment shows, and certainly we object to going to trial. There has been no arraignment, no special jury drawn as the law requires, and no venire has been served on the defendant, and for that reason we object to going to trial. And on the ground that she hasn't been arraigned, no special jury drawn, and we are not ready to go to trial. We haven't had our witnesses summonsed, because we were expecting—

"The Court: Yes, sir, overrule it.

"Mr. Baldwin: And we except.

"The Court: The Court is not responsible for not having the witnesses summonsed and that is no excuse. They have had plenty opportunity to get the witnesses here and they knew the case was set for trial, didn't you? Been knowing it for sometime?

"Mr. Baldwin: On the docket, but we were expecting an arraignment.

"The Court: Yes, sir. You knew the case was set for trial here on the list of cases made up for jury criminal and a list was mailed to you, wasn't it?

"Mr. Baldwin: We had that list of course.

"The Court: For some time, have you not?

"Mr. Baldwin: Yes, but—

"The Court: Overrule it.

"Mr. Baldwin: We were certainly expecting our constitutional rights to be arraigned.

"The Court: Yes, sir. Your constitutional rights will be fully taken care of.

"Mr. Baldwin: Now wait a minute. We want to refile this plea of mis-nomer.

"The Court: All right. Let the record show he is refiling at this time his plea of mis-nomer and let the record show that the Court is overruling his plea of mis-nomer, or sustaining the demurrer to it.

"Mr. Baldwin: Now here are the demurrers to the indictment.

"Mr. Smith: If the Court pleases, before the demurrers are filed the State would like to recommend to the Court that the Court nolle pross only so much of the count in the indictment as embraces the charge of first degree murder and allow us to continue with all other charges embraced in the two counts of the indictment.

"The Court: On recommendation of the State, the Court enters a nolle pross as to the first degree murder charges embraced in the two counts of the indictment.

"Mr. Baldwin: Now what are we put to trial on?

"The Court: You are put to trial on murder in the second degree and manslaughter in the first degree.

"The Court: Let the record show that the Court is going to put the defendant on trial on the charge of second degree murder embraced in the indictment and also for manslaughter in the first degree embraced in those two counts, and also manslaughter in the second degree embraced in those two counts of the indictment. Therefore, that this motion has been made by the State since the defendant interposed objections to going to trial and the order entering the nolle pross has been made since the objection about going to trial on account of arraignment not having been made and special jury not having been drawn."

■ There is no difficulty in deciding that a nolle prosequi of a count of an indictment is not an amendment of the indictment and that a nolle prosequi is allowable as to a part of a count which is divisible, "or which charges an offense which in itself embraces another". 22 C.J.S., Criminal Law, § 460, p. 710. See also Brewing-ton v. State, 19 Ala.App. 409, 97 So. 763; Hill v. State, 21 Ala.App. 310, 107 So. 789; Stephens v. State, 254 Ala. 50, 46 So.2d 820.

The matter of critical concern relates to the action of the court in failing to comply with the mandatory provisions of Section 63, Title 30, Code 1940: "Whenever any person or persons stand indicted for a capital felony, the court must, on the first day of the session or as soon as practicable thereafter, make an order commanding the sheriff to summon not less than fifty nor more than one hundred persons, including those drawn on the regular juries for the week set for the trial of the case, and shall then in open court draw from the jury box the number of names required, with the regular jurors drawn for the week, set for the trial, to make the number named in the order, and shall cause an order to be issued to the sheriff to summon all persons therein named to appear in court on the day set for the trial of the defendant, and must cause a list of the names of all the jurors drawn for the week in which the trial is set, and those drawn as provided in this section, together with a copy of the indictment, to be forthwith served on the defendant, by the sheriff, at least one entire day before the day set for the trial, and the defendant shall not be entitled to any other or further notice of the jurors drawn for his trial nor of the charge or indictment upon which he is to be tried. If the persons summoned as jurors fail to appear, or if the panel is exhausted by challenges, neither the defendant nor his counsel is entitled to a list of the persons summoned to supply their places."

■ The writer is of the opinion that this should compel a reversal of the judgment below. I see no need or necessity to press my position, nor voice my views. As we interpret and construe the more recent decisions of the Supreme Court, this question has been settled contrary to the contention of the appellant.

In the case of Williams v. State, 20 Ala. App. 604, 104 So. 280, certiorari granted 213 Ala. 121, 104 So. 282, 283, the accused was originally indicted for murder in the

first degree. A conviction followed for murder in the second degree.

The judgment below was reversed. After remandment and incident to another trial in the circuit court, there was no compliance with Section 63, supra. The defendant did not choose to plead former jeopardy and objected to going to trial without being accorded the privileges of the provisions of the above section. Nevertheless, the court required the defendant "to plead to murder in the second degree and the lesser degrees of homicide included in the indictment."

This court held that under these circumstances the prisoner did not stand charged with a capital felony and hence would not be entitled to a special venire. On certiorari to the Supreme Court the merits of our decision on the matter of non compliance with the section were not reviewed. Certainly the Supreme Court's decision does not indicate a disapproval of the procedure in the nisi prius court.

In the case of Blair v. State, 22 Ala.App. 24, 113 So. 414, certiorari denied 216 Ala. 463, 113 So. 414, 415, with some slight differences, the circumstances incident to the second trial were comparable to those in the Williams case. On appeal this court held that the defendant could not complain on account of the procedure and ordered an affirmance of the judgment.

On certiorari Justice Somerville, writing for the court, observed: "The court * * is of the further opinion (Brown, J., dissenting on this point) that the entry of the nolle prosequi cured the error of putting defendant on trial without a special venire and validated the verdict and judgment of guilty."

It is to be noted that in support of this holding the justice cited the Williams case, supra.

Both the Blair case and the Williams case were cited in the very recent case of Stephens v. State, supra.

It is true, of course, that the two cases we have reviewed relate to the procedure in the circuit court after a conviction for murder in the second degree and a rever-sal of the judgment by the appellate court. However, the Supreme Court held *"that the entry of the nolle prosequi cured the error * * *."* [216 Ala. 463, 113 So. 415.] (Emphasis ours.) There was a nolle prosequi in the case at bar, and after this action the accused stood for trial for a non capital offense.

Clearly, the above authorities compel the conclusion that a reversal cannot be based on the question of instant concern.

The record shows that defendant's counsel had received a court calendar of the cases set for trial, including the case at bar.

The insistence is made that this setting by the circuit clerk was a nullity so far as it related to the appellant's case and the accused was improperly put to trial without a compliance with Section 317, Title 15, Code 1940, which provides that "No person shall be tried on an indictment presented by the grand jury until at least one entire day after the case has been placed upon the trial docket of the court, except with the consent of the defendant".

■ No objections were interposed to going to trial on account of a non compliance with this section. We think that what the Supreme Court said in Ex parte Hall, 47 Ala. 675, is applicable here: "In practice, it is required of everyone to take advantage of his rights at the proper time, and neglecting to do so, will be considered a waiver."

In the case of McDaniel v. State, 97 Ala. 14, 12 So. 241, 242, the court observed: "If there was an irregularity in setting this cause down for trial, as appellant's counsel contends, it was waived. Appellant went to trial without insisting upon the irregularity, and cannot now, for the first time, be heard to complain of it."

■ The trial judge did not abuse his discretion in denying a continuance of the cause on account of the absence of one of appellant's witnesses. It appears that the witness at the time of trial was visiting in New York. Gaines v. State, 146 Ala. 16, 41 So. 865; Curtis v. State, 9 Ala.App. 36, 63 So. 745; Adams v. State, 33 Ala.App. 136, 31 So.2d 99.

Count two of the indictment follows substantially the code form. The court did not err in overruling the demurrers thereto. Franklin v. State, 233 Ala. 203, 171 So. 245.

The plea of misnomer alleges that the true name of the defendant is *Tishie* Clark and not *Tishue* Clark. The two names in question are idem sonans. 15 Ala. Digest, Names, ☜16(1) (2).

A matter of very critical concern, and one which has had our studious consideration, is the question of the sufficiency of the evidence to sustain the judgment of conviction. Our review is invited in this aspect by the request for the general affirmative charge and the motion for a new trial.

The appellant, at the time in question, resided with her married daughter and son-in-law in a home in the city of Opp, Alabama. The residence was constructed with a living room, a "sitting room", two bedrooms, a kitchen, and bath.

About 11 o'clock in the forenoon one of the occupants of the home called a physician. He came forthwith and upon arrival found the deceased lying on a sofa in the "sitting room" of the residence.

In the opinion of the physician the decedent died just a few minutes before his arrival. He made no examination other than to determine that she was dead. The appellant, her daughter, and a Negro maid were in the home at the time.

The body was carried to the undertaking parlors and there embalmed. The mortician testified that he found the deceased fully dressed and he did not observe any injuries or blood on the exterior of the body.

About thirty hours later W. L. Sowell, associate toxicologist for the State of Alabama, performed an autopsy. The witness qualified as an expert. He testified in much detail concerning his physical findings and gave his opinion as to their causes and results. He stated in part: "The heart was cyanite, that is, it was dark in color and contained small particular hemorrhages over the heart. The liver was congested and the lungs was congested. Now when I say congested I mean that it was full of blood and the small capillaries had kind of ruptured. That is what congested means. The small blood capillaries have ruptured and causes dark areas which is called congestion, and that is caused by the backing of veinus (sic) blood coming back from over the body into the liver and the lungs. The urinal genital organs, that is the vagina and uterus was examined and the external vaginal organs, the labia major and labia minor, that is, the lips of the vagina were irritated and hemorrhagic. Hemorrhagic is an area what we commonly call blood shot or bruised. It is a breaking of the small capillaries out into the tissue cells or the tissues themselves. The vagina from the external organs up to the uterus was hemorrhagic in several areas. It was abraded. The mucousa cells, that is the lining of the vagina had been abraded off. The walls of the vagina were hemorrhagic. In the vagina next to the opening of the uterus was a mucous plug or a little pile of mucous. The orifice, or the beginning of the uterus, was hemorrhagic in several areas. The canal of the cervex (sic) of the uterus, that is the opening from the vagina up into the body of the uterus itself was hemorrhagic in several areas along the walls. That is a very small opening. Then the uterus itself in the opening of the uterus, that is the lumina, there was a placena (sic). That is just the sac that a fetus or baby is contained in. In this placena (sic) was a fetus. The placena (sic) had been torn aloose (sic) from the body of the uterus or the urinal wall. It had torn loose. It was very hemorrhagic. The fetus itself measured approximately one inch long. This fetus was hemorrhagic in several areas."

The witness gave as his opinion that the lacerative and hemorrhagic conditions were caused by the use of some instrument with a sharp edge. "It doesn't necessarily have to be a sharp edge like an ax."

He stated also that he found a dislodgment of the mucous plug or stopper at the mouth of the uterus. He gave as his opinion that after this displacement if the decedent had stood erect for any length of time the plug would have passed from her body through the vagina.

He testified that in his judgment, based on his examination, it would have been impossible for the deceased to have penetrated an instrument or object into the vagina and uterus and inflicted the wounds and caused the conditions which he found.

He gave the cause of death to be a shock resulting from "the attempted abortion or the removal of the fetus from the uterus."

Before the body was removed from the residence, the appellant gave the officers a paper bag containing a nightgown, an article of ladies' underwear, an empty bottle labeled "Deodorant Cologne", and a receipt evidencing a $5 payment from the deceased to a furniture company. According to the appellant's statement to the officers, the deceased brought this sack with the articles contained when she came to the former's home.

About thirty days after the death of the deceased, the appellant was questioned by the officers on two occasions. The time of questionings was about two hours apart. At the last occasion the appellant stated that: "She (appellant) went back into the room where Claudine Petty was and found a little rubber tube about twelve inches long with a wire protruding out the end of the tube kind of crooked. * * * She (appellant) taken it and put it in the garbage can and burned it." It appears that this was the first information the officers had that this article had been seen or found.

According to the testimony of the investigating officers the defendant's daughter made a statement to them substantially as follows: "Mother went to the bath room and fixed it (speaking of the ammonia) and came back to the room and Winnie (speaking of the Negro) and myself left her. * * * We left Mother and the girl in the bed room. In about ten minutes Mother hollered and we ran in there and the girl was slumped in the chair. * * * I don't know anything about what taken place between Mother and the girl when they were in the bed room together."

Mrs. Brown, with whom the deceased lived, testified that the lady left her home in a taxi with Horace Broxton about 5 p. m. the day before the death. At the time she carried with her a paper bag and a purse.

The evidence gives no further account of the decedent until she reached appellant's home the next morning.

The accused did not testify at the trial and only introduced her daughter as a witness. The latter narrated the incident as follows: "A. We were all cleaning house and I was mostly sick. I had been under the care of Dr. Hurst, and as the girl came she knocked on the door. I was sitting in mother's bed room and whenever she knocked mother asked her in and she asked mother for a dose of ammonia, and I went to my bed room and mother came straight behind me. She went to the bath room to get the ammonia and she went to the kitchen and went back to the bath room, and she went back up there and it wasn't but just a thought before mother called us. So we all ran in there. This Winnie Dell Mimms and myself went in mother's room.

"Q. Just a minute. Winnie Dell Mimms, who is that? A. She is my colored maid, or was my colored maid.

"Q. You say Mrs. Clark called you? A. Yes, sir, and she said the girl has fainted. The girl was lying over on the couch—on the bed room couch, and I told her to get the doctor and she called Dr. Hurst and there wasn't any answer and she said, 'you try to get one,' and I called Dr. MacLennan and he said he would be down there in a few minutes. He said, 'put her feet higher than her head and put cold cloths on her face.'"

The witness testified that she did not remember telling the investigating officers that her mother was left alone in the room with the deceased for about ten minutes.

It is evincingly apparent that the conviction of the accused was dependent upon circumstantial evidence.

The rule prevails in criminal prosecutions that the burden is on the State to prove by the evidence beyond a reasonable doubt and to a moral certainty the crime has been committed and that the accused is the guilty person. It is well settled also that circumstantial evidence may afford satisfactory proof of the corpus delicti.

We will not attempt to analyze the evidence. Endeavor has been made to delineate it sufficiently to afford a full and fair review.

We have read the evidence en banc and have reached the considered conclusion that the defendant was not due the general affirmative charge, nor was the court in error in overruling the motion for a new trial.

The case of Ducett v. State, 186 Ala. 34, 65 So. 351, furnishes support for our view. The evidence discloses that the deceased and the defendant were alone in a room when the former received a fatal pistol wound. The physical facts and circumstances strongly rebutted an act of suicide.

The case of Kozlowski v. State, 32 Ala. App. 453, 27 So.2d 811, certiorari granted 248 Ala. 304, 27 So.2d 818, contains circumstances somewhat comparable to those in the case at bar. We refer, of course, to the aspect of the evidence which tended to show an opportunity to commit the offense.

See also DeSilvey v. State, 245 Ala. 163, 16 So.2d 183.

We could cite a legion of authorities which have factual background in some aspects analogous to those in the case at bar, but we do not think this is necessary.

Appellant's counsel insists that certain remarks of the court during the progress of the trial were prejudicial to the rights of the defendant and we should order a reversal of the judgment on this account.

Included in the complaint are several excerpts from the court's oral charge. No exceptions were reserved to these statements. We are not authorized to review these matters in this state of the record. Tucker v. State, 202 Ala. 5, 79 So. 303; McPherson v. State, 198 Ala. 5, 73 So. 387.

### Rulings on the Evidence.

The court properly allowed the toxicologist to testify that he found the deceased pregnant with child at the time he performed the autopsy. This was proof of the existence of a condition present at the time of the alleged attempted abortion.

It based the purpose for the commission of the act charged in the indictment and clearly related to a material inquiry.

The toxicologist was shown a diagram which was torn from a text, Sex Behavior In Marriage. The witness stated that the picture correctly depicted the locations and descriptions of certain female organs. Objections were interposed to its introduction on the ground that the authority of the text was not established. There was no merit in this position. The correctness of the exhibit was established by the expert. Its admissibility was governed by the rule relating to the introduction of properly identified pictures, drawings, diagrams, maps, etc. Maund v. State, 254 Ala. 452, 48 So.2d 553; Williams v. State, Ala.Sup., 51 So.2d 250; Jones v. State, 33 Ala.App. 451, 34 So.2d 483.

The toxicologist was permitted to answer this question in the negative: "Dr. Sowell, would it have been possible to have made those hemorrhages from the outside without something penetrating into the vagina and the uterus?"

He was also asked: "Doctor, taking into consideration the hemorrhage conditions that you found in the body that you have testified to, the location, the position, and the shape of the organs, that is the vagina and the uterus, in your opinion, would it have been possible for this deceased to have penetrated an instrument or object as has been testified to? Into the uterus and the vagina as has been testified to here."

The witness responded to the last question as follows: "It would have been impossible."

The point posed by the objections is that the questions called for the unauthorized conclusion of the witness.

The general applicable rule is stated in 20 Am.Jur., Sec. 780, p. 651, and Sec. 782, p. 653:

"Expert opinion testimony is never admissible where the subject is one of common knowledge as to which facts can be intelligently described to the jury and understood by them, and they can form a reasonable opinion for themselves."

168

"Opinion testimony of experts is only admissible in cases of necessity, where the proper understanding of facts in issue requires some explanation of those facts or some deduction therefrom by persons who have scientific or specialized knowledge or experience. Such testimony does, in a broad general sense, encroach upon the province of the jury; and when it relates to matters directly in issue, it should not be admitted unless its admission is demanded by the necessities of the individual case."

See also 32 C. J. S., Evidence, § 534 (5), p. 249.

In the case of State v. Lee, 65 Conn. 265, 30 A. 1110, 27 L.R.A. 498, the court held that a physician who had performed an autopsy upon the body of the deceased could testify whether, in his opinion, the wounds on the interior of the womb, which he observed, were self inflicted.

See also Com. v. Leach, 156 Mass. 99, 30 N.E. 163; Miera v. Territory, 13 N.M. 192, 81 P. 586.

We entertain the view that inferences from the particular wound on the interior surface of the vagina and uterus of the deceased required peculiar knowledge and experience, not common to all men; and therefore the opinion of the witness, who was shown by the evidence to be an expert on the subject matter, was admissible.

Objections were interposed to the introduction of the contents of the paper bag which we described in the delineation of the evidence.

Undisputedly these articles were brought to the home of the appellant by the deceased. They were handed to the officers by the former. It may be said that their introduction added little to the material inquiry. However, they formed a part of the res gestae and, over the general objections, were clearly admissible.

We have examined the articles. Their condition and character are such that in no manner could they excite the prejudice of the jury against the rights of the accused.

On cross examination the daughter of the defendant was asked if it were not a fact that one of the bedrooms in her mother's home was used for girls to stay overnight. The negative answer to the question rendered it harmless to appellant. Edmonds v. State, 16 Ala.App. 157, 75 So. 873; Stephens v. State, 250 Ala. 123, 33 So. 2d 245.

There was no error in the court's rulings relating to the introduction of evidence which tended to impeach the testimony of appellant's daughter. Proper procedure was followed in this regard. Bridges v. State, 225 Ala. 81, 142 So. 56.

It is true the lady did not specifically deny making the statements to the officers which were at variance with her testimony at the trial. She stated that she did not remember. For impeachment purposes, this was equivalent to a denial. Green v. State, 233 Ala. 349, 171 So. 643.

Refused Charges.

The general affirmative charges have had our attention.

Charges 7–A and 16 were covered by given written instructions. Title 7, Sec. 273, Code 1940; Gettings v. State, 32 Ala. App. 644, 29 So.2d 677.

Charge 18 was properly refused. Webb v. State, 162 Ala. 58, 50 So. 356; Smith v. State, 183 Ala. 10, 62 So. 864.

We find that refused charge number 27 was approved in Bailey v. State, 168 Ala. 4, 53 So. 296, 390, and Chaney v. State, 178 Ala. 44, 59 So. 604 (see criticism of charge in Justice McClellan's dissent).

The Supreme Court departed from its former holding in McClain v. State, 182 Ala. 67, 62 So. 241, 245, and condemned the instruction in this manner: "The presumption of a defendant's innocence attends him during the trial only until it is overthrown by evidence of his guilt beyond a reasonable doubt. * * * Charge M violates this principle."

This court followed this view in Vaughn v. State, 25 Ala.App. 204, 143 So. 211. See also Hopkins v. State, 26 Ala.App. 213, 155 So. 891.

We think that we are authorized to take the last pronouncement of the Supreme Court as controlling our review.

.Charge number 30 is argumentative and was properly refused. Morris v. State, 23 Ala.App. 448, 126 So. 612.

Counsel for appellant excepted to the portion of the oral charge in which the trial judge stated that the witness Sowell was an expert. When the exception was interposed, the court excluded the statement from the consideration of the jury.

A rather novel insistence is made here. It is urged that the effect of the ruling of the court in excluding his statement was equivalent to a holding that the witness in question was not an expert according to his belated view.

We cannot accede to this insistence. If out of an abundance of caution the judge excluded his statement, it does not follow that he was nullifying his former rulings relating to the qualifications of the witness as an expert.

We have been favored with a very helpful brief from appellant's able attorneys. We have attempted to respond to each question which was stressed in this manner and by oral arguments. It appears that we have covered each meritorious matter which is properly presented for our review.

The record is free of prejudicial error. The judgment below is ordered affirmed.

Affirmed.