74 So.2d 513

**Grady FREEMAN**

v.

**STATE.**

6 Div. 788.

Court of Appeals of Alabama.

May 25, 1954.

Rehearing Denied June 22, 1954.

626

Chas. R. Wiggins, Jr., and Caine O'Rear, Jr., Jasper, for appellant.

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Owen Bridges, of counsel, for the State.

CARR, Presiding Judge.

The appellant, Grady Freeman, was indicted for murder in the first degree. The trial resulted in a conviction for murder in the second degree.

The list of jurors served on the defendant contained the name of Minnie L. Rufus King, residing in Beat 30, Walker County, Alabama.

It appears that Rufus King was the only person by that name who resided in this beat. He did not respond to the summons, but when the case was called for trial he was sent for and appeared. After being questioned by the court in the presence of the defendant and counsel he was excused because of ill health.

Appellant's attorneys moved to quash the venire, taking the position that the mistake in the name did not apprise the defendant of an accurate list.

In brief counsel relies on Carwile v. State, 148 Ala. 576, 39 So. 220.

In the case of Irwin v. State, 220 Ala. 160, 124 So. 410, the Supreme Court pointed out the inapplicability of the Carwile case because of subsequent changes in the law.

In any event, it does not appear that we have an analogous factual situation in the case at bar. There was only a mistake in the name of the venireman by the inclusion of "Minnie L."

The courts have held that a mere mistake in the name of a juror appearing on the venire list does not give rise to any merit in a motion to quash. Ziniman v. State, 186 Ala. 9, 65 So. 56; Phillips v. State, 248 Ala. 510, 28 So.2d 542; Savage v. State, 174 Ala. 94, 57 So. 469; Gordon v. State, 22 Ala.App. 214, 114 So. 279; Jackson v. State, 22 Ala.App. 133, 114 So. 68.

See also, Title 30, Sec. 37, Code 1940.

We do not see the necessity or need to go into a detailed delineation of the evidence.

The question of prime concern from a factual approach is whether or not the accused was acting in self-defense when he took the life of the deceased.

Alcie Williams, the dead man, was a brother of the appellant's wife. It appears that he was a shiftless kind of person. Apparently he imposed himself on the hospitality of his sister and brother-in-law. In any event, just prior to the homicide he had been a prolonged guest in their little rural home and he made no contributions to expenses of the very large household.

It is accurate to observe that he was engaged in making whiskey while he was a visitor in the home. There is some tendency in the evidence that the appellant aided in this unlawful enterprise. This relationship, be it business or social, brought about inharmonious differences which led up to the fatal shooting.

The homicide occurred within the curtilage of the defendant's home or at a place close by.

The state toxicologist gave the following description of the wounds on the body of the deceased:

"A. There was some superficial abrasions on his face, on the right jaw and on the neck below the jaw, and on the left side on the cheek particularly on the cheek bone and on the underside of the jaw about half way between the chin and the ear. There was a bruise in the upper eyelid of the right eye, about three-eighths of an inch by three-fourths of an inch, right in the inner corner of the eye. The left upper eyelid was blackened with the greatest discoloration on the inside.

"Q. Did you observe what appeared to be a bullet wound in this body? A. Yes, sir.

"Q. Will you point out on me just where it was located? A. One was two inches below the line of the shoulders, one and one half inch to the right of the exact center of the chest. The bullet came out at a point two inches to the right of the spine and at a point six inches below the base of the neck. There were two bullet wounds in the top of the head, slightly forward of the exact top, separated by about one or one and one-fourth inches, one being slightly to the right of center and the other slightly to the left of center. The one that was to the left of center went down through the brain and struck the skull about level with the ear, about the bottom of the brain pan, and glanced back and lodged near these holes. The one on the other side went down and struck the bone right back of the eye and shattered it and went on into the face or neck muscles down several inches into the neck."

The question of the sufficiency of the evidence to sustain the verdict is raised only by a motion for a new trial. Unquestionably we should not disturb the judgment of the court in his action in overruling the motion. Counsel does not contend that we should.

Two of the defendant's sons were present at the time of the homicide and testified in their father's behalf. They had been called and testified before the grand jury which returned the indictment.

On cross-examination in the trial below each of these boys was interrogated at length with reference to his testimony before the grand jury. It was developed that their testimony before the grand jury was in some aspects in conflict with that given at the trial then in progress.

The insistence is made that, for impeachment purposes, the solicitor did not pose the proper predicate in that he failed to state the time the boys were before the grand jury and the persons present in this group.

■ The reason for the rule upon which the position is based is to avoid taking the witness by undue surprise. If his attention is directed with reasonable certainty to the time, place, and persons present, it cannot be said that the rule has been violated.

In the instant case the solicitor directed the attention of the witnesses to the fact that he was inquiring about a time subsequent to the homicide, when he (the solicitor) was present and asking the questions and when a number of other persons were in the room.

This question was recently reviewed by the Supreme Court in the case of Sparks v. State, 261 Ala. 2, 75 So.2d 103. The opinion goes into the matter at some length.

■ We entertain the view that these witnesses were not taken by surprise and they were not in doubt about the occasion to which the questions related.

It may be noted that the objections did not point out to the court any nonadherence to the predicate rule.

It is urged also that many of these questions which were propounded to these witnesses for impeachment purposes did not relate to matters that were inconsistent with the witnesses' testimony on direct examination. Cotton v. State, 87 Ala. 75, 6 So. 396; Western Ry. of Alabama v. Turrentine, 197 Ala. 603, 73 So. 40; Lester v. Jacobs, 212 Ala. 614, 103 So. 682; Phillips v. State, 248 Ala. 510, 28 So.2d 542.

Because of the great number of inquiries involved it is not practical to point out each one specifically. We find that there are some which do not refer to matters that are strictly contradictory. In many instances in this aspect no objections were interposed. Where objections are made the queries were more or less preliminary and led up to inquiries that were in conflict with statements made on direct examination.

■ We have given considerable study to the record in this aspect. Taking the entire setting into account, we are convinced that the substantial rights of the accused were not jeopardized in this particular. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

During the progress of the introduction of the State's evidence a question was asked by the solicitor to which objections were interposed. After the grounds were stated, the solicitor said: "The defendant will have a right to testify." The court granted a motion of appellant's attorney to exclude this statement and instructed the jury to disregard the remark and not to let it in any manner influence their verdict.

The defendant did not testify in his own behalf. It is urged that the effect of this remark by the solicitor was a comment on the failure of the appellant to testify.

We are convinced that the prosecuting officer did not have this in mind. He did not know at the time whether or not the defendant would offer himself as a witness. He was urging the court to overrule the objection on the basis of his idea that the defendant could clarify the inquiry when he testified.

As we have indicated, the judge responded to the request by excluding the remark. He went further and gave specific instruction to the jury. There was no motion for a mistrial. Hawkins v. State, 29 Ala.App. 221, 195 So. 762.

We would have a different situation if the remarks of the solicitor had been so prejudicial that eradication would have been impossible. National Biscuit Co. v. Wilson, 256 Ala. 241, 54 So.2d 492; Pure Milk Co. v. Salter, 224 Ala. 417, 140 So. 386.

■ Clearly the statement does not come within this category. Rhodes v. State, 34 Ala.App. 481, 41 So.2d 623.

Lacy Williams, a brother of the deceased, was interrogated very briefly by the solicitor. In fact, he was asked only eleven questions. Included in these were some relating to his identification. The effect of his testimony was that he saw his brother

prior to the homicide and at that time he was in apparent good health. That he saw him shortly after the shooting at which time he was dead. Williams was the first witness introduced by the State.

■ On cross-examination appellant's attorney attempted to show where the deceased had lived for several months prior to his death. Unquestionably at this early stage in the proceedings this inquiry was not material. In sustaining the objections the court observed that he could not see the materiality of the matter at that time and invited counsel to indicate the purpose and relevancy of the attempted proof.

The courts are committed to the rule which provides that free and extensive cross-examination should be permitted for the purpose of testing the memory and sincerity of a witness and to inquire into any matter which would tend to show motive, interest, bias, etc. Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199; Armour & Co. v. Cartledge, 234 Ala. 644, 176 So. 334.

The latitude thus allowable, or its restrictions, rests largely in the discretion of the trial judge. Broadway v. State, 35 Ala. App. 86, 45 So.2d 480; Smith v. State, 15 Ala.App. 7, 72 So. 593.

It cannot be said that this discretion was abused in disallowing proof of matters that were entirely foreign to the factual issues which were developed at the time of the ruling.

It appears from the record that the defendant made statements with reference to the killing on two different occasions shortly after the homicide. The solicitor and two other officers were present each time.

Counsel insists that the proof shows that each of these confessions was not voluntarily made.

We review the circumstances incident to the first statement. The solicitor asked the witness this question:

"Immediately before he made that statement, did you or anyone in your presence of hearing, or anyone in the presence of hearing of this defendant, offer him any reward or hope of reward or any inducement or threaten him in any manner to get him to make a statement?"

The reply was in the negative.

At this point in the proceedings the court permitted counsel for the defendant to examine the witness on voir dire. During this examination the following questions and answers appear:

"Mr. O'Rear: To refresh your recollection, I will ask you if Mr. Wilson didn't say, 'The boys told me the way it happened, you haven't told me the right of it.'

"The Witness: No, Mr. Wilson didn't say that.

"Mr. O'Rear: Did you say that?

"The Witness: Yes, sir.

"Mr. O'Rear: Did you further say, or did Mr. Wilson say anything about bringing him any clothes?

"The Witness. Yes, sir."

■ This is the only evidence which in any manner tends to establish that some coercion or inducement was employed to get the accused to make the statement. We do not think that this was sufficient to render the confession inadmissible. Aaron v. State, 37 Ala. 106; Levison v. State, 54 Ala. 520; King v. State, 40 Ala. 314; Smith v. State, 248 Ala. 363, 27 So.2d 495; Stone v. State, 105 Ala. 60, 17 So. 114; Reedy v. State, 246 Ala. 363, 20 So.2d 528; Johnson v. State, 242 Ala. 278, 5 So.2d 632.

With reference to the second statement, counsel did not interpose any objections to its introduction. We are frank to state that there is no proof which has the least tendency to show that this statement was not also voluntarily made.

## Refused Charges

The court refused thirty-nine written charges which the defendant tendered.

The following are either abstract, covered by the oral charge or given charges, or are not based on the evidence: 6, 9, 12,

13, 14, 15, 18, 19, 20, 23, 24, 27, 28, 30, 31, 32, 34, 38, 40, 41, 42, 43, 44, 45, 46, and 48. Doughty v. State, 228 Ala. 568, 154 So. 778; Title 7, Sec. 273, Code 1940; Edwards v. State, 205 Ala. 160, 87 So. 179.

■ Charge 5 is misleading. In order to convict the defendant the jury was not required to accept as true every statement of the witnesses. Smith v. State, 183 Ala. 10, 62 So. 864; Webb v. State, 162 Ala. 58, 50 So. 356; Clark v. State, 36 Ala. App. 159, 57 So.2d 375.

■ Number 10 omits any reference to the duty to retreat.

In developing the evidence the attorneys made frequent use of a chart or drawing which depicted the locale of the homicide and buildings and roads thereabout. It was not introduced in evidence, so we are somewhat handicapped in interpreting the evidence in this aspect.

According to the proof the defendant shot the deceased first while the former was in a barn near his home and the latter was standing at the barn door.

■ Apparently the deceased was not mortally wounded by this first shot. He ran out into a field, which, as best we can determine, was not a great distance from the yard surrounding appellant's home. The defendant followed and there shot the deceased twice. We are unable to tell from the record whether or not the place where the last shots were fired was within the curtilage of the home. If it was in a field, as the evidence seems to indicate, the charge in question was properly refused, because the accused was not relieved of the duty to retreat. Perry v. State, 94 Ala. 25, 10 So. 650; Vickers v. State, 18 Ala.App. 282, 91 So. 502; Valentine v. State, 19 Ala.App. 510, 98 So. 483; Nunn v. State, 19 Ala.App. 619, 99 So. 738; Dykes v. State, 34 Ala. App. 216, 39 So.2d 21.

■ Charges 11 and 29 are practically in duplicate. They were refused without error. May v. State, 253 Ala. 517, 45 So.2d 698; Williams v. State, 36 Ala.App. 26, 58 So.2d 646; Williams v. State, 36 Ala.App. 583, 61 So.2d 861.

■ Charge 21 omits any reference to retreat. It is also faulty in not relating the "apparent danger" to the defendant's belief. Certainly it would have to appear to him as a reasonable man that he was in imminent danger at the time he fired the fatal shots.

Charge 16 is argumentative. Morris v. State, 23 Ala.App. 448, 126 So. 612; Clark v. State, 36 Ala.App. 159, 57 So.2d 375.

Charge 17 is elliptical. York v. State, 34 Ala.App. 188, 39 So.2d 694.

Charge 26 predicates a right to an acquittal on the doctrine of self-defense without setting out the essential elements of the doctrine. Mitchell v. State, 129 Ala. 23, 30 So. 348.

The court instructed the jury fully and accurately as to these elements.

■ Clearly charge 33 was properly refused.

Charge 35 invades the province of the jury and is not directed solely to the altercation with which we are concerned.

Charges 36 and 39 make no reference to freedom from fault.

The trial judge charged the jury quite fully in respect to the evidence relating to the violent and turbulent character of the deceased.

■ Charge 47 is much involved and has a tendency to mislead the jury. It places too much emphasis on a portion of the evidence and ignores other proof. The instruction could have no application to the shooting in the field. Ray v. State, 248 Ala. 425, 27 So.2d 872; Milner v. State, 24 Ala.App. 350, 135 So. 599.

We have attempted to discuss each presented question which in our view merits any treatment.

The judgment below is ordered affirmed.

Affirmed.