200 So.2d 500

**Larry M. GAMBLE**

v.

**STATE.**

**7 Div. 867.**

Court of Appeals of Alabama.

April 11, 1967.

Rehearing Denied April 25, 1967.

Smith & Moore, Guntersville, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was indicted by the Grand Jury of Etowah County on a charge of first degree manslaughter for the fatal stabbing of Wayne Walden. Following a plea of not guilty, appellant was found guilty of manslaughter in the second degree and sentenced to a term of twelve months in the county jail. This appeal is made following denial of application for probation and motion for a new trial.

Wayne Walden, age sixteen, was stabbed during a fight with appellant, age seventeen, at the Rainbow Skating Rink, Gadsden, Alabama, at approximately midnight on February 12, 1966, following a dance. Dr. Thirwell Nolen, a Gadsden physician, who attended deceased until his death, testified that deceased had received an injury to his right chest, apparently made by a sharp object and that he died "apparently of blood loss, shock, and probably a contributing factor was—respiratory insufficiency due to his chest and mediastinum, and collapse of his lung" caused by this wound.

The State's next witness was Allan Slade, age fifteen, who was a witness to the fight. He had been told by his friend, Ernest "Butch" Hofferbert, Jr. that there was going to be a fight and he stayed to watch it. He testified as follows:

"Q. Now what happened, if anything, when the Defendant came out of the door?

"A. He came out and—told Wayne Walden, said, 'if you hit me I'll stab your heart out.'

"Q. Did you hear that?

"A. Yes, sir.

"Q. You heard that? And what did Wayne Walden do, if anything?

"A. He—he was already running at him when he said that, swinging, and Larry Gamble threw up his hands to try to block it, and that's when he stuck him."

The witness further testified that he saw a knife in appellant's hand and that he saw him stab Walden with it. He later identified State's Exhibit I as this knife. This exhibit was introduced into evidence over appellant's objection.

There was a policeman on duty inside the skating rink and the fight broke up when he entered the parking lot. Both participants in the fight left the scene. Walden ran several yards, called out that he was stabbed and collapsed.

Ernest "Butch" Hofferbert, Jr., age sixteen, also witnessed the fight. He testified for the State that he had heard that there was going to be a fight and was there to watch it. He stated that he saw appellant inside the rink about an hour before the fight began and spoke to him. He identified the knife, State's Exhibit I, as that used in the stabbing. He testified as follows:

"Q. I want you to look at State's Exhibit Number 1, and tell us if you have seen that knife before? (Handing an object to the witness.)

"A. Yes, sir.

"Q. Where did you see that knife before?

"A. When he put it up in my chest, in the skating rink.

"MR. MOORE: I didn't understand that.

"THE COURT: Speak out loud.

"THE WITNESS: When he put it up to my chest, in the skating rink.

"Q. (By Mr. Floyd) Is that the time, one hour before, that you have told us about?

"A. Yes, sir.

"Q. Who put it in your chest, in the skating rink?

"A. Larry did.

"MR. HORNSBY: I am going to object to this, your Honor, and move to exclude this. Irrelevant, incompetent and immaterial, to the issues.

"MR. FLOYD: Now just a minute.

"MR. HORNSBY: Not within the res gestae.

"THE COURT: You move to exclude it?

MR. HORNSBY: Yes, sir.

"THE COURT: I sustain the objection and grant the motion. That is excluded.

*     *     *     *     *     *

"MR. MOORE: We don't object to him identifying the knife.

"THE COURT: I didn't exclude his identification, but I did exclude the statement.

\* \* \* \* \* \*

"Q. In whose hands did you see it?

"A. Larry's.

"Q. Larry's? Was it open or closed?

"MR. MOORE: We object to that. That's immaterial.

"THE COURT: I overrule it. Was it open or closed?

"THE WITNESS: It was open."

The mother of the deceased boy testified that at the time of his death Walden was sixteen years of age, five feet and nine inches tall, and weighed approximately 150 pounds.

The first defense witness, Donnie Pentecost, testified that he was a witness to the fight, but saw no meeting of appellant and deceased in the skating rink prior to the fight. He further testified that appellant stated to him he "was going to see if he could wait until tomorrow and talk it over, that he didn't want to fight." The witness stated that in the parking lot, deceased came over and asked appellant if he "was ready to finish the fight" and struck appellant before he could answer him. He testified that he never saw the knife at the time of the fight; that he didn't know how deceased was cut or see anyone cut him; and he identified the knife, Exhibit 1, as belonging to appellant, which knife was found under the seat of the car in which the witness and appellant had ridden on the night in question.

The only utterance heard by the witness was while the deceased fought appellant on the ground when he heard appellant state that he would "crack your skull" and the deceased answered, "You will have to do it."

Appellant testified in his own behalf and stated that the deceased had come up to him inside the skating rink about 10:30 P.M. and started a fight with him but that he did not fight back. Appellant identified the knife as his own and stated that he had it that night in his left pocket and that he had drawn the knife. His testimony was as follows:

"Q. Did you get it out of that pocket?

"A. Yes, sir.

"Q. When did you get it out of that pocket?

"A. Well, after I had fell down on the ground, and he jumped on top of me, and that is when I got it out.

"Q. What did you do with it when you got it out?

"A. Well, I got it out, and I put it in between us. And I figured he would see it and stop.

\* \* \* \* \* \*

"THE COURT: Was it there between you and him?

"THE WITNESS: I put it between us.

"Q. (By Mr. Moore) Was he at that time hitting you, or doing anything?

"A. Yes, sir."

Appellant admitted that he had placed the knife in such a position that it had entered the body of deceased:

"Q. (By Mr. Moore) Did you stab Wayne Walden?

"A. Not exactly.

"Q. All right. What did you do with the knife when you got it out?

"A. I just held it up.

"Q. You just held it up?

"A. (The witness answered by an affirmative nod of the head.)

"Q. Between you?

"A. (The witness answered by an affirmative nod of the head.)

**4**

"Q. All right the blade was open and you held it up between you?

"A. Yes, sir."

Appellant also admitted that he walked to the car of one Troy White after the struggle broke up and hid the knife under the front seat of the car, where it was later found.

The State offered rebuttal evidence by Charles Dease who stated that he had heard appellant tell Donnie Pentecost, "I don't want to fight him tonight. If I do, I'll cut him."

We have diligently reviewed appellant's claims of error and find no merit therein. Appellant, however, seemingly relies most heavily on claim of error No. 4 in which he claims a mistrial should have been granted based on the following testimony:

"Q. Did—did Larry Gamble send a message by you, to Wayne Walden, inside the skating rink?

"A. Inside?

"Q. Yes, sir, inside. Did he send a message by you, to Wayne Walden? Did he tell you to tell Wayne Walden anything?

"MR. FLOYD: We object to that, your Honor. That would be self serving.

"MR. MOORE: No, sir.

"THE COURT: What was the question?

"MR. FLOYD: Whether he—whether Larry Gamble told him to tell Wayne Walden something.

"THE COURT: How long before?

"MR. MOORE: 30 minutes.

"MR. HENSLEE: This defendant can testify to that, but not this witness on the stand, on what he heard somebody say.

"MR. MOORE: Now, if the Court please, at this time we move the Court to declare a mistrial. The Solicitor has made a reference to this Defendant testifying.

"THE COURT: Overruled. Overruled.

"MR. MOORE: We except."

Appellant here relies on Code of Alabama, 1940, Tit. 15, Sec. 305, which reads as follows:

"The defendant in criminal cases a competent witness for himself.—On the trial of all indictments, complaints, or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness; and his failure to make such a request shall not create any presumption against him, nor be the subject of comment by counsel. If the solicitor or other prosecuting attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within thirty days from entry of the judgment."

The comments by the solicitor were, in our opinion, not prejudicial to appellant. The statements were not a comment upon appellant's failure to testify, for at this point in the trial the solicitor could not have known whether appellant was to testify or not. It is evident from the context of the argument at that time that the solicitor was arguing the admissibility of evidence which he thought was hearsay. The objection which he raised was on the basis that the witness could not say what he heard from appellant, and that only the one who spoke could actually say what transpired.

In Arant v. State, 232 Ala. 275, 167 So. 540, the court stated:

"* * * to be available for reversal, the court must be persuaded the remark was so grossly improper and highly prejudicial as to have been ineradicable. American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507; Bachelor v. State, 216 Ala. 356, 113 So. 67; Anderson v. State, 209 Ala. 36, 95 So. 171."

In our opinion the statement here referred to was not so grossly prejudicial that it should have been eradicated or removed from the realm of jury consideration. This statement by the solicitor was only a comment by him upon the *evidence during the trial,* and not an unfavorable allusion to appellant's testimony or silence.

In Freeman v. State, 37 Ala.App. 623, 74 So.2d 513; cert. den. 261 Ala. 697, 74 So.2d 520, the court held that the statement by the solicitor, "The defendant will have a right to testify", was not a comment on his failure to do so.

Though seemingly, as in the *Freeman* case, supra, the defect, if any, was cured when the court sustained the objection and told the jury to not consider the remarks. In the *Freeman* case the defendant did not testify. In our case the objection was overruled, but appellant did testify.

This cause is due to be and the same is hereby

Affirmed.