The appellant was convicted of murder under § 13A-6-2, Codeof Alabama 1975, and was sentenced to life imprisonment. The evidence tended to show that the victim, Ms. Willia Wesley, was stabbed to death at her home by the appellant.
 I
The appellant argues that the trial court erred in denying his motion to dismiss the indictment because of the State's alleged failure to comply with Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he argues that, along with numerous pretrial discovery orders, he filed a "Motion for Disclosure of Leniency," but the State never disclosed that a witness, Brazell Simon, had been given a promise of leniency for his cooperation. The appellant's trial counsel alleges that during an overnight recess of Simon's cross-examination he listened to a tape recording of Simon's interview with police, which had been supplied to him pursuant to discovery, and discovered that Simon had been verbally "worked over" in that interview. At the hearing on the motion to dismiss the indictment, defense counsel admitted that he had been provided with the Simon tape, before trial, at the direction of the prosecutor. The tape had previously been in the possession of a private investigator for another witness's attorney. Additionally, the prosecutor stated that he was not at the interview and that he had never listened to the tape. Because the record is clear that the appellant was furnished the tape before trial, the appellant's Brady argument must fail, as there was no failure to disclose. Ex parte Cammon,578 So.2d 1089 (Ala. 1991); Gibson v. State, 580 So.2d 38
(Ala.Cr.App. 1990).
In addition to the alleged Brady violation, the appellant argues that his conviction should be reversed because, he says, it was based on perjured testimony. He alleges that the prosecutor was aware of threats made to Simon by the police, but that he knowingly allowed the witness to testify that no threats had been made. This "bad faith" argument however, was not raised until the motion for acquittal; thus, it was untimely. Beadnell v. State, 574 So.2d 890 (Ala.Cr.App. 1990). Moreover, the prosecutor stated that he had no knowledge of the contents of this tape. Therefore, there was no bad faith by the prosecution because he did not act knowingly in introducing any alleged false testimony.
The appellant also alleges bad faith or misconduct on the part of the police during the interview with Brazell Simon, in threatening the witness, allegedly to procure testimony against the appellant. However, the record indicates that the appellant introduced the tape on cross-examination of Simon and played extensive excerpts from the tape in an attempt to impeach Simon. Thus, evidence of the alleged misconduct by the police was placed before the jury. Moreover, despite the allegations concerning the tainted nature of Simon's testimony, his testimony was, in fact, cumulative of another witness who was present with Simon when the appellant committed the offense. Rule 45, A.R.App.P.
 II
The appellant argues that the trial court erred in denying his motion for new trial because, he says, the prosecutor engaged in unprofessional conduct during the trial by calling a certain witness, Jimmy Green, to the stand. Earlier in the trial, the appellant, while cross-examining a police investigator, had introduced evidence that Jimmy Green was initially investigated for this offense. Specifically, the appellant introduced evidence that Jimmy Green was present with onlookers at the scene of the offense and that Jimmy Green had splatters of blood on his pants legs and shoes, and had blood on his hand. The appellant also brought out during his cross-examination the facts that the investigator was familiar with Jimmy Green and that he knew him to be a deaf mute. The witness testified that he could "somewhat" communicate with Jimmy Green, but that Jimmy Green did not know sign language. The officer testified that, on the night of the offense, he had attempted to communicate *Page 134 
with Jimmy Green, but that he was unable to do so.
Thereafter, the State called Jimmy Green to the stand as a witness. Because Jimmy Green was a deaf mute and could not testify, the appellant requested that the State make a proffer of the witness's expected testimony. The State failed to do so. The appellant argued that the State brought the witness forward in order to prejudice the appellant's case. The appellant asked the trial court to give curative instructions to the jury, and the trial court instructed the jury that, where no testimony was given, there was no evidence to consider.
While the prosecutor's methods were clearly questionable, the appellant's allegations of prejudice rest on the fact that Jimmy Green's appearance on the stand showed the jury that he was a deaf mute. However, testimony to that effect had previously been admitted by the appellant and, therefore, any error was cumulative and therefore harmless. Rule 45, A.R.App.P.
 III
The appellant argues that police misconduct occurred in obtaining the indictment. He alleges that the only witness who testified and could assist the grand jury in its factfinding efforts was Officer Parker. In McConico v. State, 458 So.2d 743
(Ala.Cr.App. 1984), this court held that the testimony of a single witness before the grand jury was sufficient to comply with the statutory requirements for indictments. See §12-16-200, Code of Alabama 1975. Here, the record reveals that at least three witnesses testified before the grand jury. Moreover, no inquiry into the sufficiency of the evidence is indulged when it appears that witnesses were examined by the grand jury or that the grand jury had before them legal documentary evidence. See Coral v. State, 551 So.2d 1181
(Ala.Cr.App. 1989).
 IV
The appellant argues that the trial court erred in denying his motion for judgment of acquittal and his motion for a new trial. Specifically, he contends that the verdict is contrary to the great weight of the evidence. The evidence presented included the testimony of Brazell Simon, who testified that he was with the appellant on the night of the murder and that he observed the appellant walking toward the victim's house around the time of the murder. Donnie Davis, who was also with the appellant, testified that he saw the appellant enter the victim's kitchen, pick up a knife, and return to the bedroom, where the victim's mutilated body was found shortly thereafter. Vince Beard, an acquaintance of the appellant, testified that the appellant admitted to him that he had killed the victim. Additionally, there was corroborative evidence presented at trial to substantiate these witnesses' testimony that they were with the appellant on the night of the incident. Although the appellant alleged that he was out of town on the night of the murder, ample circumstantial evidence was presented that showed that on the night of the murder the appellant attended a dice game held within walking distance of the victim's house.
In Buice v. State, 574 So.2d 55, 57 (Ala.Cr.App. 1990), this court stated:
 " ' "[A] jury may believe part of the evidence of a witness and reject part." Cochran v. State, 42 Ala. App. 144, 147, 155 So.2d 530, cert. denied, 275 Ala. 693, 155 So.2d 533 (1963). "In order to convict the defendant the jury was not required to accept as true every statement of the witnesses." Freeman v. State, 37 Ala. App. 623, 630, 74 So.2d 513, cert. denied, 261 Ala. 697, 74 So.2d 520
(1954). "Conflicting evidence should be reconciled by the jury, if possible, and if they can not reconcile it, they may base their verdict on that part of the testimony which they consider worthy of credit, and reject that which they deem to be unworthy of belief. Inconsistencies and contradictions in the testimony of a witness do not make it inherently improbable." Arnold v. State, 33 Ala. App. 146, 30 So.2d 587 (1947). "It is not the law that mere contradicting statements or declarations of a witness are sufficient to raise a reasonable doubt in the minds of the jury *Page 135 
as to the truth of the testimony of a witness." Walters v. State, 24 Ala. App. 370, 373, 135 So. 600
(1931).
 " ' "The inconsistencies may impair the credibility of the witness and reduce the weight of the testimony, but they do not destroy the probative force of the testimony as a matter of law — the weight to be given such testimony is for the trier of fact to determine." 30 Am.Jur.2d Evidence § 1082 (1967).
 " ' "A duty devolves upon the jury, if it can be done, to place that construction upon the evidence which makes all witnesses speak the truth." Clements v. State, 19 Ala. App. 640, 641, 99 So. 832 (1924).'
 "Jones [v. State, 469 So.2d 713, 716-17
(Ala.Cr.App. 1985)]."
 "Moreover, in P.S. v. State, 565 So.2d 1209
(Ala.Cr.App. 1990), this court held:
 " '[S]uch evidence should be reviewed by this court in the light most favorable to the State, Bass v. State, 55 Ala. App. 88, 313 So.2d 208
(1975), and our judgment should not be substituted for that of the jury. Cumbo v. State, 368 So.2d 871, 875 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).'
"565 So.2d at 1212."
Additionally, circumstantial evidence is to be given the same weight as direct evidence, provided it points to the guilt of the accused. See Bradley v. State, 577 So.2d 541 (Ala.Cr.App. 1990); Hughley v. State, 574 So.2d 991 (Ala.Cr.App. 1990).
Thus, although conflicting evidence was presented, there was sufficient evidence presented to convince the jury beyond a reasonable doubt of the appellant's guilt.
AFFIRMED.
All the Judges concur.