(125 So. 398)

**GLADDEN v. STATE.**

7 Div. 565.

Court of Appeals of Alabama.

Feb. 18, 1930.

E. O. McCord & Son, of Gadsden, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

BRICKEN, P. J.

The indictment charged this appellant with murder in the first degree; that is to say, that he unlawfully and with malice aforethought killed Euna Gladden (his wife) by shooting her with a gun or pistol.

The record proper appears regular, and no question is presented in this connection.

Many points of decision are presented based upon rulings of the court upon the trial, which resulted in the conviction of the accused for murder in the second degree and the sentence of ten years' imprisonment in the penitentiary.

On the trial it was disclosed without dispute that the said Euna Gladden died as a result of a pistol shot wound in her left breast which penetrated her body; the bullet also passing through the bed clothing and two mattresses on the bed, upon which her body was found lying. The bullet struck the floor and made an indentation therein, and also struck the wall of the house. This bullet was found upon the floor in the room.

The death of the deceased woman occurred on October 18, 1926. The indictment was not returned, however, until the October, 1928, term of the circuit court, about two years thereafter.

The real issue upon this trial was whether the woman committed suicide, as contended by the defendant; or did he kill her, as insisted by the state.

The record is voluminous as a result of the vast amount of testimony taken upon the trial. Innumerable exceptions were reserved. We have carefully studied the entire record, and have given thoughtful and attentive consideration thereto and to the points of decision presented. So far as we have been able to ascertain, the only testimony adduced upon this trial of an incriminating nature and tending to connect this appellant with the death of his wife, was that given by the witness Birdie Davis, and her husband, Russell Davis, both of whom were in jail charged with the commission of this same offense at the time of making the statements, to the officers, which tended to incriminate this appellant. The record shows that a short time after these parties made the statements they were both liberated from prison. These two witnesses were shown by the undisputed evidence to be of very bad character, and numerous witnesses, including the grandmother and grandfather of the woman, Birdie Davis, testified that she and her husband both were unworthy of belief in a court of justice. The evidence also showed without dispute that the witness, Russell Davis, had formerly been convicted of crime involving moral turpitude. The manifest unworthiness and the impeachment of these two witnesses thus shown, and by other evidence of like import, does not, under the rules of evidence, vitiate, nullify, or render incompetent the testimony given by them upon the trial. Under the rule of evidence, the weight or probative force of the testimony of all witnesses is for the jury, and in all cases it is for the jury to determine, in view of all the evidence, how far, if at all, the witnesses may be credited.

In the absence of the testimony of the two witnesses, Birdie Davis and her husband, Russell Davis, there was no evidence showing or tending to show the corpus delicti, or from which it might be inferred. To the contrary, the other evidence as a whole, coupled with the physical facts, tended strongly to show that the unfortunate deceased, Euna Gladden, died by her own hand; that is to say, that she committed suicide as insisted by appellant. These two witnesses testified that about two months before Euna Gladden was killed this defendant stated in their presence at their home that he was going to kill her, and on the night before the killing made a similar statement. They stated that upon each occasion Tim Gladden was also present when the threats were uttered. The defendant and Tim Gladden both strenuously denied such threats were made and their testimony was in direct conflict with that given by the Davis woman and her husband. The exceptions reserved to the court's rulings in permitting this testimony are not well taken. As stated, this conflicting evidence was for the jury, and the court properly so held. The Davis woman also testified that during the month of June, preceding the trial, or about eighteen months after the death of his wife, this defendant confessed to her that he did kill his wife, and in this connection she testified he stated "that he was standing in a little hall and she was standing up when he shot her, that he shot her right in the breast, etc." Appellant denied that he made the alleged confession or any part thereof. He also insists the court erred in admitting this testimony, as no proper predicate has been laid. We note from the record,

on the redirect examination of this witness by the state, the following occurred: "On being shown a pistol witness said she did not know whether that was the one or not, it was like it. That in June of the year before defendant was taken up she had a conversation about the death of his wife. Here State's counsel propounded to the witness the following question: "I will ask you if you threatened him in any way to get him to make the statement to you." The witness answered, "Yes, a little bit;" and continued, "I told him a lie." Upon objection by defendant, the court, without ruling, asked the witness, "Did you make any threat against Mr. Gladden?" The witness replied, "You mean that I would do something to him, or something like that." The court relied, "Yes." The witness answered, "No sir." The court said, "Offer him any reward or hold out any inducement to get him to tell you." The witness replied, "No sir I did not." Over objection and exception, this witness was then allowed to testify as to above statement alleged to have been made to her by the accused. We cannot place error upon this ruling, as it appears the predicate as finally laid with the help of the court, met the required rule. As in other instances the truth or falsity of this testimony was for the jury to determine.

As stated, the defendant strenuously denied making the statements imputed to him by the witness Birdie Davis. There is also much force in his insistence that the physical facts as shown by all the evidence, the range of the bullet through the body of deceased, and through the two mattresses and onto the floor, refute and contradict the purported statement that the deceased was standing at the time the shot was fired; but this was also for the jury to reconcile and determine from all the evidence in the case.

The deceased, Euna Gladden, having come to her death as the result of the bullet wound in her body, the material inquiry upon this trial was whether or not this appellant fired the shot that killed her. On entering upon his trial the accused was presumed to be innocent; this presumption was evidentiary and attended him throughout the entire trial or until such time as the state had met the burden of showing by the evidence his guilt beyond a reasonable doubt. On the trial the inquiry should have been confined to this issue and none other. The accused was not upon trial for probable undue neglect of his sick children, nor for his alleged illicit consorting with the Davis woman and her husband with the incident resultant neglect of his wife, the deceased. The evidence was allowed, over objections and numerous exceptions, to take an almost unlimited course upon these last two questions. This was highly prejudicial to the substantial rights of the accused and of necessity unduly placed him in a most unfavorable light before the jury. The opprobrium thus created and engendered would manifestly be difficult of eradication, and, as insisted, may have been the moving cause in the verdict rendered. The fact alone that the jury fixed the lowest penalty and found the defendant guilty of the lowest degree of murder, notwithstanding the crime charged was of the most atrocious character, would tend to indicate that his conviction might have been rested, as the appellant insists, on general principles, and as a result of the unfavorable light in which the accused necessarily appeared as a result of these matters foreign to the real issue upon this trial. These numerous rulings were erroneous for the reasons stated, and the exceptions in this connection must be sustained. These exceptions need not be here discussed in detail; they are far too numerous, and no good purpose could be thereby subserved.

There was evidence that the deceased had stated she intended to kill herself, and also that she had attempted to do so. The undisputed physical facts attending her death tended to show that the fatal shot was fired while she was lying upon the bed. It could not have been fired while she was standing in the hall looking at her husband, as the state insisted.

Appellant insists that all of the evidence as to his whereabouts at the time the shot was fired, without conflict, disclosed he was in the field some distance away at work with his brother baling his hay, and that, when he was told of the tragedy, numerous witnesses testified they saw him running from the field to his house where it occurred.

Appellant insists that, in the argument to the jury by state's counsel, several unwarranted and illegal statements were made, to which objections were interposed, coupled with motions to exclude. We note in this connection the court remarked: "I don't think there is any testimony that he (defendant) said there was no necessity for a doctor or for a coroner, I don't remember any evidence of that sort, and that part of it is not proper argument." The court appears to have been correct in this statement; the record shows no evidence upon which this argument could have been based. It was therefore the duty of the court to have sustained the objection and to exclude this argument from the jury and to forcibly instruct them not to consider it in their deliberations. This the court did not do, and the improper and highly prejudicial statement by state's counsel remained with the jury. The mere statement by the court that "it is not proper argument" was in no manner the equivalent to a ruling by the court excluding the argument, and was abortive, resulting in prejudicial error.

Several of the charges refused to defend-

ant could very properly have been given, as they contain correct propositions of law. It is not deemed essential to treat these charges separately, for upon another trial these questions may not be involved.

For the errors indicated, the judgment of conviction from which this appeal was taken is reversed, and the cause remanded.

Reversed and remanded.