Rabon Antonio Walker was convicted of the murder of Angela Marie Jones and was sentenced to life imprisonment. On this appeal from that conviction, he raises one issue.
He contends that the trial court erred by refusing to allow him to introduce evidence of a prior inconsistent statement made by State's witness Fred Wilson at the preliminary hearing in this case. Defense counsel had tape-recorded the hearing and he sought to play a portion of the tape to impeach Wilson at trial.
At trial, Fred Wilson testified that on July 11, 1989, he took Angela Marie Jones to a convenience store. He waited in the car while Ms. Jones entered the store. Outside the store, Wilson saw the appellant and another man he knew as "William." Wilson observed Ms. Jones leave the store and make a "begging motion" toward William. William approached Ms. Jones. Wilson watched as Ms. Jones took something from William's hand and began to walk away. Then William grabbed Ms. Jones's pants pocket and called out to the appellant, who was just coming out of the convenience store. The appellant pulled a gun from his pocket and pointed it at Ms. Jones's head. Ms. Jones moved toward the car where Wilson was waiting. Appellant, still pointing the gun, followed her. As Ms. Jones opened the car door and sat down on the passenger's side, the appellant stuck the gun inside the car and shot Ms. Jones in the chest.
At trial, the appellant admitted shooting Ms. Jones, but claimed it was accidental. He testified that as he was coming out of the convenience store, his companion, Rubin Williams, called out to him, "The *Page 571 
whore [referring to Ms. Jones] snatched my rocks. Go get it for me." The appellant denied that he intended to shoot Ms. Jones. He testified that he pointed the gun at Ms. Jones only to "scare her" into returning "the rock." He maintained that Ms. Jones grabbed his arm, and when he jerked his arm back, the gun fired.
On cross-examination of State's witness Fred Wilson, the following occurred:
 "Q. [By defense counsel]: Did [Ms. Jones] appear to be what you would call on the streets 'messed up'?
"A. She didn't look messed up to me.
"Q. She didn't?
"A. No.
". . . .
 "Q. Do you remember back on August 2, 1989, of being here in the courthouse and testifying?
"A. Yes.
 "Q. Do you remember my asking you the question: 'Did she appear to be messed up on drugs of any kind; what I mean by "messed up" is under the influence of a controlled substance.' "And to that you answered, 'Yeah.'
 "A. I don't remember you asking me that question back in August.
"Q. Did you answer 'yes,' or did you answer 'no.'
 "[DISTRICT ATTORNEY]: He says he does not remember. He has to deny it to play the tape.
 "THE COURT: I agree. I sustain to that at this point."
The trial court's ruling that the witness "has to deny" the prior statement before the opposing party may present evidence of the self-contradiction was error. "If a proper predicate has been laid, proof may be made . . . that the witness made the self-contradictory statements whether the witness denies having made them or merely states that he does not remember whether or not he made them." Carr v. State, 495 So.2d 714, 717
(Ala.Cr.App. 1986).
It is a "fallacy . . . that if the witness, when asked whether he did not say such-and-such a thing to the contrary, professes failure to remember or evades the question, then the contrary statement cannot be offered, because there is no assertion to contradict." 3A Wigmore on Evidence § 1037 at 1042 (Chadbourn rev. 1970).
 "In truth, . . . his answer to the preliminary question is wholly immaterial. He has already made on the stand an assertion A; we wish to know that he has elsewhere made the opposite assertion A'; and, before introducing the latter we must ask him whether he made it; this preliminary question is simply to give warning and lay the foundation required by the rule; the contradiction already exists (if at all) between the assertions A and A', and thus his answer to the preliminary question is of no consequence as forming a contradiction. It is the question alone that is essential; if the warning has been given, that is all that the law is concerned with:
 "HEMMINGWAY, J., in Billings v. State, 52 Ark. 303, 308, 12 S.W. 574, 575 (1889): [The cross examination] is required in order that he may explain apparent contradictions and reconcile seeming conflicts and inconsistencies. If he cannot remember the fact, he is unable to do what the law affords him an opportunity to do. . . . The testimony is discredited because he affirms to-day what he denied yesterday; the legitimate effect of such contradiction cannot depend upon his power to remember it.
 "It follows that the mere failure of the witness to recollect, when asked the preliminary question, whether he made the other statement does not prevent the impeacher from offering it; nor, for the same reason, does it matter whether in any other way his answer lacks in positiveness."
3A Wigmore at 1042-43 (brackets, omission, and emphasis in original) (footnotes omitted).
The Attorney General argues that this issue has not been preserved for review because appellant neither asked Wilson the necessary questions as a predicate to impeachment nor made an offer of proof regarding "what the expected answer was *Page 572 
and that such answer was relevant and admissible." Brief of Appellee at 19.
A proper predicate consists of "asking the party being impeached whether he made such statement, specifying with reasonable certainty the time when, the place where, the person to whom such supposed statement was made and the substance of such statement." C. Gamble, McElroy's Alabama Evidence § 157.01(1) at 329 (3d ed. 1977). See Perry v. Brakefield,534 So.2d 602, 606 (Ala. 1988). Defense counsel's question to Wilson satisfied this test and, by its very wording, included the "offer of proof" of the expected answer.
Although the exclusion of the evidence was error, we find it harmless in this case because the victim's drug use was undisputed at trial. See Bracewell v. State, 506 So.2d 354, 357
(Ala.Cr.App. 1986) (exclusion of defense witness's testimony regarding reason accused left the State following murder harmless in view of fact that the issue of flight was undisputed at trial).
It was obvious to the jury that this prosecution was for a drug-related homicide. State Medical Examiner Alfredo Paredes, who performed the autopsy, testified that the victim's blood contained .10 milligrams per deciliter of cocaine. The appellant admitted that he had used cocaine and that he knew his companion, Rubin Williams, was a "crack dealer." State's witness Fred Wilson admitted that he had previously been convicted for possession of cocaine. The undisputed evidence was that the victim made a "begging motion" towards a "crack dealer," who opened his hand to her and who then tried to restrain her and called for appellant's assistance when she "snatched" a "rock" from him. From this evidence, the jury could reasonably conclude that all of those present at the homicide — appellant, the victim, and the State's eyewitness — were either cocaine users or cocaine dealers. Therefore, we believe the exclusion of Fred Wilson's prior statement — that the victim was "messed up on drugs" — had, under the particular circumstances of this case, a negligible impact on appellant's trial.
We recognize that the significance of a prior inconsistent statement often does not lie in the truth of the matter asserted — either in the present trial or at an earlier proceeding — but in the fact of the witness's having contradicted himself and thus having shown a "capacity to err," see 3A Wigmore § 1017 at 994-95. Nevertheless, taking into account all the circumstances of this case, Wilson's "error" was not significant. Compare Carr v. State, 495 So.2d at 717
(where witness's prior contradictory statement provided the only evidence of a disputed fact, its exclusion was not harmless).
Defense counsel conducted a "thorough and sifting" cross-examination of Wilson, see Hooper v. State, [Ms. 3 Div. 91, March 29, 1991] (Ala.Cr.App. 1991), and successfully impeached Wilson with another self-contradiction between his trial testimony and his preliminary hearing testimony. Wilson was also shown to have been convicted of robbery, in addition to possession of cocaine, so the jury had reason to discount his credibility if they chose to do so. See Williams v. State,451 So.2d 411, 420 (Ala.Cr.App. 1984) ("[T]he credibility of [the witness's] testimony was already in question because a member of the Huntsville Police force had testified that [the witness's] reputation for truth and veracity was bad and that he would not believe him under oath"). Thus, we hold that the exclusion of evidence implying that Wilson was either mistaken or lying when he testified that the victim "didn't look messed up" did not, under the particular facts of this case, prejudice the appellant.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 573