The appellant, Renard Tucker, was indicted for the murder of Melvin Johnson during a robbery in the first degree or an attempt thereof, a capital offense defined in Ala. Code 1974, § 13A-5-40(a)(2). A jury found him guilty of murder and the circuit court sentenced him to life imprisonment. On this appeal of that conviction, he raises five issues.
 I
The appellant claims that the State's evidence was insufficient.
State's witnesses Kelly Watson and Lune Carlos Brown were eyewitnesses to the killing. Ms. Watson testified that on the morning of April 29, 1992, she saw three *Page 535 
people approach the victim. Those three people were Adero ("Yab") Pearson, "Yab's" brother "Naw Naw," and the appellant. Ms. Watson testified that "Yab" pulled a gun and the victim began to back up. Then Ms. Watson heard the appellant say, "[S]hoot that bitch, you know, shoot him." R. 159. She said that she saw the victim "pulling off his jewelry," and that she heard him say, "[P]lease don't do that." R. 158. Ms. Watson testified that the appellant and "Naw Naw" were "picking up the [victim's jewelry]" as the victim was "walking backwards," R. 160, 161. Ms. Watson stated that the victim fell over a wall and was on the ground when "Yab" shot him in the stomach. R. 162-63.
Lune Carlos Brown testified that he saw only two individuals — "Yab" and the appellant — approached the victim. Brown said that the appellant had a gun. Brown heard the appellant say to the victim, "[G]ive it up, give it up, I know you got some more, give it up." R. 291. According to Brown, when the victim replied, "[T]hat's it, that's all of it, that's all of it," the appellant shot him. R. 292, 293.
Edmond Griffin, the brother of Lune Carlos Brown, testified that in May or June 1992, he was in the juvenile detention center and that the appellant was also in the detention center at that time. Griffin stated that while he and the appellant were in the detention center, the appellant told him that he (the appellant) "shot the dude in the stomach and . . . was going to say Lune did it." R. 256.
Each of these three witnesses for the State was impeached in just about every way a witness can be impeached. Ms. Watson, who admitted that she smoked marijuana for her "bad eyes" (R. 172), had made several prior inconsistent statements about the shooting. Brown, who was Ms. Watson's live-in boyfriend, admitted that he had a prior conviction for assault in the first degree and that he was on probation in another "case". R. 306. He acknowledged that at the time of trial he was in jail for "[p]robation violation and possession of uncontrolled [sic] substance." Id. Griffin was impeached with several prior inconsistent statements and with the fact that he had been in juvenile detention for "drugs." R. 252.
"The manifest unworthiness and the impeachment of these . . . witnesses thus shown, . . . does not, under the rules of evidence, vitiate, nullify, or render incompetent the testimony given by them upon the trial." Gladden v. State, 23 Ala. App. 416,417, 125 So. 398, 399 (1930). "The weight and probative value to be given to the evidence, the credibility of the witnesses and the resolution of conflicting testimony are for the jury's determination." Brown v. State, 588 So.2d 551, 559
(Ala.Cr.App. 1991).
 " '[T]he fact that witnesses for the prosecution contradict or give evidence tending to impeach one another does not preclude a verdict being based on the testimony of such of them as may be believed.' 23 C.J.S. Criminal Law § 905(b) (1961). Where the testimony of two witnesses relates to the same occurrence, the statement of either can be looked at by the jury. Hurston v. State, 235 Ala. 213, 216, 178 So. 223 (1938). 'The jury may disregard the evidence of [a prosecution] witness without necessarily acquitting defendant. It is their province to convict him if the whole of the evidence, taken together, is sufficient even though the chief witness for the state may have willfully sworn falsely as to a material fact.' McCoy v. State, 232 Ala. 104, 107, 166 So. 769 (1936). '[A] jury may believe part of the evidence of a witness and reject part.' Cochran v. State, 42 Ala. App. 144, 147, 155 So.2d 530, cert. denied, 275 Ala. 693, 155 So.2d 533 (1963). 'In order to convict the defendant the jury was not required to accept as true every statement of the witnesses.' Freeman v. State, 37 Ala. App. 623, 630, 74 So.2d 513, cert. denied, 261 Ala. 697, 74 So.2d 520 (1954). 'Conflicting evidence should be reconciled by the jury, if possible, and if they can not reconcile it, they may base their verdict on that part of the testimony which they consider worthy of credit, and reject that which they deem to be unworthy of belief. Inconsistencies and contradictions in the testimony of a witness do not make it inherently improbable.' Arnold v. State, 33 Ala. App. 146, 147, *Page 536 
 30 So.2d 587 (1947). 'It is not the law that mere contradicting statements or declarations of a witness are sufficient to raise a reasonable doubt in the minds of the jury as to the truth of the testimony of a witness.' Walters v. State, 24 Ala. App. 370, 373, 135 So. 600 (1931).
 " 'The inconsistencies may impair the credibility of the witness and reduce the weight of the testimony, but they do not destroy the probative force of the testimony as a matter of law — the weight to be given such testimony is for the trier of fact to determine.' 30 Am.Jur.2d Evidence § 1082 (1967)."
Jones v. State, 469 So.2d 713, 716-17 (Ala.Cr.App. 1985), quoted in Poole v. State, 650 So.2d 541, 543 (Ala.Cr.App. 1994).
 II
The appellant claims that he was entitled to a jury instruction on the lesser included offense of manslaughter because, he says, there was a reasonable theory from the evidence that the victim's death was the result of a provocation or was the result of recklessness.
"This argument fails because an unintentional killing during the course of a robbery is, nevertheless, first degree murder under the felony-murder doctrine, and the evidence was undisputed that . . . [the] victim [was killed] during the course of . . . [a] robb[ery]." Coulter v. State,438 So.2d 336, 344 (Ala.Cr.App. 1982), aff'd, 438 So.2d 352 (Ala. 1983).
 III
The appellant was also not entitled to have the jury charged on the lesser included offense of robbery. Because there was a killing in the course of and in furtherance of a robbery, "[i]t is clear . . . that the appellant is at least guilty of felony murder." Kinder v. State, 515 So.2d 55, 72 (Ala.Cr.App. 1986).
 IV
The appellant argues that the trial court's oral charge on felony murder was confusing and misleading. He also asserts that the court made an impermissible comment on the evidence when it gave the following example of felony murder:
 "Now, I can give you an example of felony murder. It is not the only way that felony murder can be committed, but this was a case that I tried, and this is just an example of felony murder. And that is what occurred on this occasion. Now, that is not to say that this example I'm giving you is the only example of felony murder, but this is an example of it.
 "I was trying a case one time where a robbery occurred of a grocery store. Both participants in the robbery came in, both of them had on ski masks. One was armed with a sawed-off shotgun. They took money. They also took, in the course of the robbery, a pistol belonging to the owners of the grocery store. The owners of the grocery store were told to lay down and not get up, which they did. And shortly after the robbers left and went out [of] the store the owners of the grocery store heard a shot. The son finally got up and went outside, and one of the robbers had a very neat .45 caliber bullet hole between his eyes, and obviously he was dead. He happened to be the one that had the sawed-off shotgun. The other robber was apprehended and charged with robbery and murder.
 "What made it murder was the state could not show that there was any intent on the other participant's part to kill him, but the fact that the robbery occurred provided the intent necessary for it to be murder under what is known as the felony murder doctrine.
 "Murder requires intent to kill. But if you have a commission of a robbery, and during the commission of a robbery, one of the participants, or a homicide occurs, then this is murder under the felony murder doctrine. There does not have to be an intent that anyone dies, but if during the course of the commission of this robbery or in the immediate flight therefrom a participant or any other person causes the death of anyone, then this would be murder under the felony murder doctrine." R. 549-51. *Page 537 
After the jury had been deliberating for some time, it requested that the trial court reinstruct it on "the elements of the offenses of capital murder and murder." R. 568. The court correctly redefined those crimes and then stated:
 "[The felony murder doctrine] is a theory that is very difficult for lay persons to understand, and I understand that. And that is the reason I gave that definition that I gave yesterday, not a definition, an example. The appellate courts do not like for courts to give examples, but appellate courts don't ever have to charge juries and try to explain the differences between capital murder and the felony murder doctrine. And that is the reason I gave that example. But that example that I gave yesterday is only an example of what felony murder can be. That is not the only manner in which felony murder can happen, but that was an example of one that I tried, and that is just an example of it. That is not the only way that felony murder can take place, but that is just an example of it." R. 573-74.
The appellant argues that the circuit court's example of felony murder "did not correctly reflect the evidence in the instant case." Appellant' brief at 29. We agree. However, it is precisely because the court's example did not parallel the facts of this case that it did not constitute a "comment on the evidence." Compare Ex parte Brown, 581 So.2d 436, 437
(Ala. 1991) (trial court erred by summarizing disputed evidence from the State's viewpoint and then instructing jury to render verdict of guilt if it believed that summary); Cameron v.State, 615 So.2d 121, 126 (Ala.Cr.App. 1992) (trial court erred by giving hypothetical example that tended to bolster testimony of State's witness and to disparage defense theory of the case).
Although not related to the facts of the case, "the example was sound when considered with the court's entire oral charge and its utilization was not error." Walker v. State,369 So.2d 814, 824 (Ala.Cr.App. 1978), reversed on other grounds,369 So.2d 825 (Ala. 1979).
 V
The circuit court ruled that the defense could not impeach Lune Carlos Brown with a prior conviction for altering the identification of a firearm because that offense did not constitute a crime of moral turpitude. R. 285. We find that the trial court erred, but under the circumstances, we find that the error was harmless.
In Clark v. Alabama State Bar, 547 So.2d 461 (Ala. 1989), the Alabama Supreme Court determined that failure to pay federal income taxes was not a crime of moral turpitude because "[t]here was no fraud or deceit on the part of [the defendant] as to the fact that he owed the taxes." Clark, 547 So.2d at 463. The court distinguished failure to pay income taxes, which did not involve fraud or deceit, from evasion of income taxes, which, because it "show[ed] an inherent deceit and fraud[,] . . . has been found to be [a crime] involving moral turpitude." Id. (emphasis added).
In State v. Self, 492 So.2d 319, 322-23 (Ala.Cr.App. 1986), this court determined that the offense of alteration of the identity of a firearm, as defined in Ala. Code, 1975, §13A-11-64, required that the actor obliterate or change the identifying marks on a firearm with the specific intent toconceal or to misrepresent its identity. Clearly, the offense of alteration of the identity of a firearm involves "an inherent deceit and fraud." Cf. Clark, 547 So.2d at 463.
We have found no direct authority for the proposition that altering the identity of a firearm is a crime of moral turpitude. It has been held that the offense of conspiracy to possess an unregistered firearm does involve moral turpitude.People v. Garrett, 195 Cal.App.3d 795, 241 Cal.Rptr. 10,11-13 (1987). In Garrett, the California Court of Appeal held that the federal offense involving the possession of a "modified or altered firearm" described "an act which is not innocent in itself but rather an evil act which exposes others to danger." 195 Cal.App.3d 795, 241 Cal.Rptr. at 12. We conclude that altering the identity of a firearm is a crime of moral turpitude. The circuit court erred when it prevented the defense from impeaching Lune *Page 538 
Carlos Brown with his prior conviction for that offense.
Nevertheless, we are convinced that that error did not injuriously affect the substantial rights of the appellant and therefore does not warrant a reversal of his conviction. See Rule 45, A.R.App.P. Lune Carlos Brown was thoroughly impeached by other evidence, including inadmissible evidence. Brown admitted that he had a prior assault conviction and that he was on probation in another "case". R. 306. He testified that he was in jail for "[p]robation violation and possession of uncontrolled [sic] substance." Id. "It is clear to us that a probation violation is not a 'crime' of any kind and is thus not admissible per se under § 12-21-162, [which allows a witness to be impeached upon a showing that he has been previously convicted of a crime involving moral turpitude]."Favor v. State, 389 So.2d 556, 560 (Ala.Cr.App. 1980).
Brown was also impeached with several prior inconsistent statements he made to the police concerning the homicide, and his testimony was manifestly in conflict with that of Kelly Watson, the other purported eyewitness to the shooting. Under the circumstances, we believe the impeachment value of the firearm alteration conviction was negligible and that the trial court's error in disallowing it was harmless. CompareWalker v. State, 581 So.2d 570, 572 (Ala.Cr.App. 1991) (although trial court erroneously disallowed accused's attempt to impeach State's witness by prior inconsistent statement, error was harmless because accused conducted a "thorough and sifting" cross-examination of witness and successfully impeached witness with another self-contradiction). Williams v. State,451 So.2d 411, 420 (Ala.Cr.App. 1984) (exclusion of evidence that would have impeached witness was harmless error when witness's credibility had already been called into question by two other pieces of evidence). See also Dill v. State, 600 So.2d 343, 365
(Ala.Cr.App. 1991), aff'd, 600 So.2d 372 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.